## MEIJER, INC. v STATE TAX COMMISSION

1. TAXATION—EXEMPTIONS—AIR POLLUTION CONTROL—STATUTES—
   BALING AND COMPACTING WASTE—PRIMARY PURPOSE.

   A baling and compacting facility for the disposal of waste is a
   facility within the meaning of the tax exemption of air pollu-
   tion control facilities act where the primary reason for the
   acquisition of the balers and compacters was to abate air
   pollution in order to comply with state and local air pollution
   standards (MCLA 336.1 *et seq.;* MSA 7.793[1] *et seq.).*

2. TAXATION—EXEMPTIONS—AIR POLLUTION CONTROL—STATUTES—EL-
   EMENTS FOR EXEMPTION.

   To qualify for tax exemption a pollution control facility must (1)
   be designed and operated primarily for the ocntrol, capture and
   removal of pollutants from the air, (2) be suitable, reasonably
   adequate, and (3) promote the goals of the Air Pollution Act
   (MCLA 336.3; MSA 7.793[3], MCLA 336.11 *et seq.;* MSA 14.58[1]
   *et seq.).*

3. TAXATION—STATUTES—AIR POLLUTION CONTROL—FACILITIES—
   UNITS—PRIMARY PURPOSE—TAX EXEMPTION.

   The tax exemption of air pollution control facilities act does not
   state that the individual units or equipment which make up a
   facility must be designed and operated primarily for pollution
   control or be devices which remove pollutants from the air; the
   act requires only that the facility itself be operated primarily
   for pollution control reasons.

4. TAXATION—STATUTES—LEGISLATURE—INTENT—AIR POLLUTION CON-
   TROL—TAX EXEMPTION—WASTE DISPOSAL.

   The replacement of polluting incinerators with a method of waste
   disposal which completely eliminates pollution is an act which
   the Legislature intended for consideration of tax exemption
   under the air pollution tax exemption act (MCLA 336.1 *et seq.;*
   MSA 7.793[1] *et seq.).*

---

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 61 Am Jur 2d, Pollution Control §§ 9, 32–34, 103.
   71 Am Jur 2d, State and Local Taxation § 549.

5. TAXATION—EXEMPTIONS—AIR POLLUTION CONTROL—COMMERCIAL
    VALUE—REDUCTION OF EXEMPTION—COSTS OF OPERATORS.
    A tax exemption for the construction of air pollution control
    facilities must be reduced to the extent of *any* commercial or
    productive value derived from any materials captured or recov-
    ered by the facility without regard for the costs of operating
    the facility.

Appeal from Kent, Stuart Hoffius, J. Submitted November 4, 1975, at Grand Rapids. (Docket No. 22786.) Decided December 10, 1975.

Petition by Meijer, Inc. before the State Tax Commission for a tax exemption certificate for the construction of an air pollution control facility. Exemption denied. Petitioner appealed to the circuit court which reversed the commission and granted the exemption. The commission appeals by leave granted. Affirmed in part and reversed in part.

*Miller, Johnson, Snell & Cummiskey* (by *James A. Engbers* and *Jon R. Muth),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *Lawrence W. Morgan,* Assistants Attorney General, for the Tax Commission.

Before: T. M. BURNS, P. J., and V. J. BRENNAN and M. F. CAVANAGH, JJ.

M. F. CAVANAGH, J. The State Tax Commission, by leave granted, appeals from a decision of the circuit court reversing the commission's order which denied appellee's request for tax exemption under the tax exemption of air pollution control facilities act. 1965 PA 250; MCLA 336.1 *et seq.;* MSA 7.793(1), *et seq.*

Appellee, Meijer, Inc., operates several depart-

ment and food stores throughout the state. The use of incinerators to dispose of the store's solid waste had created an air pollution problem. For example, the results of a 1969 inspection by the Grand Rapids Department of Air Pollution showed that appellee's incinerators failed to meet black smoke and fly-ash emission standards of the Grand Rapids air pollution ordinance which parallels the state pollution standards. After several attempts to eliminate the emissions proved unavailing, appellee conducted a study and found it could recycle 75 percent of the refuse by using compacters and balers, disposing of the remainder through landfill operations.

Appellee installed a baler and compacter facility at its Jenison store in Georgetown Township, and thereafter, appellee sought a tax exemption certificate from the State Tax Commission pursuant to 1965 PA 250.

The State Tax Commission referred the matter to the Department of Public Health as directed by § 2 of the act. This agency determined that the facility failed to qualify for tax exemption and forwarded a letter of denial to appellee. Appellee petitioned for a hearing before the State Tax Commission and from its formal denial of the tax exemption, thereafter appealed to Kent County Circuit Court.

The court reversed the commission and found appellee's balers and compacters eliminated all air pollution, and was the only successful method developed by appellee. The court opined that the purpose of the Air Pollution Act (MCLA 336.11 *et seq.;* MSA 14.58(1) *et seq.)* is to control, abate and prevent air pollution, that the tax exemption provisions are tied directly to that objective, and that since the language of the provisions is broad

enough to cover any equipment which eliminates air pollution, appellee was entitled to a tax exemption.

Appellant now urges to this Court that the lower court erroneously construed the air pollution tax exemption act in ruling that appellee's solid waste compacting and baling facility constitutes an air pollution control facility subject to tax exempt status.

Since the instant question is principally a matter of statutory construction, the origin of analysis is the tax exemption of air pollution control facilities act. MCLA 336.1 *et seq.;* MSA 7.793(1) *et seq.* Section 1 of the act defines an air pollution control facility in pertinent part as follows:

"1. As used in this act 'facility' means machinery, equipment, structures, or any part or accessories thereof, installed or acquired for the primary purpose of controlling or disposing of air pollution which if released would render the air harmful or inimical to the public health or to property within this state."

Whether something constitutes a facility within the meaning of the act thus depends on the primary reason for its acquisition and/or installation. The language does not focus on the functional characteristic of the object itself. The initial question is whether appellee acquired and installed the balers and compacters in order to prevent, control or abate air pollution. If so, was that the primary reason? The facts indicate that appellee experienced air pollution problems at its stores throughout the state. Incinerators, afterburners, and other devices proved unsuccessful in eliminating the smoke and fly ash. As a result of a study conducted by appellee, it was decided that the less expensive method of waste disposal via incinera-

tion would be replaced with recycling and landfill operations. Appellee added a baling room to the subject store, and installed balers and compacters. This method of waste disposal was found to have completely eliminated the air pollution problem.

Based upon the evidence, one may fairly conclude, as did the lower court, that the primary reason for the acquisition of balers and compacters was appellee's desire to abate air pollution. The fact that appellee chose this alternative means of waste disposal owing to the need to comply with state and local air pollution standards lends credence to the conclusion. The baling and compacting facility is thus a facility within the meaning of the act.

That appellee's compacting and baling operation meets the definition of a facility does not *per se* entitle it to tax exemption. Section 3 of the exemption act lists other elements that must be satisfied prior to the issuance of a tax exemption certificate:

"If the director of public health finds that the *facility* is designed and operated primarily for the control, capture and removal of pollutants from the air, and is suitable, reasonably adequate and meets the intent and purposes of the air pollution act, Act No. 348 of the Public Acts of 1965, as amended, being sections 336.11 to 336.36 of the Compiled Laws of 1948, and rules promulgated thereunder, he shall so notify the state tax commission who shall issue a certificate. The effective date of the certificate shall be the date of issue of the certificate." MCLA 336.3; MSA 7.793(3). (Emphasis added.)

The appellee's facility must therefore (1) be "designed and operated primarily for the control, capture and removal of pollutants from the air", (2) be "suitable, reasonably adequate", and (3) promote the goals of the Air Pollution Act. Appel-

lant does not argue that the facility of appellee fails to satisfy the last two requirements. Indeed, the fact that this alternative method of waste disposal has completely eliminated the pollution problem caused by incineration readily fulfills these requirements. Appellant's argument focuses on the first requirement. Appellant claims that (a) compacters and balers are not designed and operated primarily for pollution control, and (b) are not devices which remove pollutants from the air.

The act provides that the *facility* must be designed and operated primarily for pollution control. It does not state that the individual units or equipment which make up a facility must possess such a feature. Otherwise, devices which were not manufactured and sold with pollution control in mind would never qualify for tax exempt status, no matter how successful their use, and no matter if the primary object for using the device was pollution reduction.

In short, acquisition of compacters and balers will not automatically entitle a party to tax exemption. The party must show that the primary reason for the acquisition or installation was pollution control, that the *facility* was designed and operated primarily for pollution control reasons, and that it adequately controls pollution. Thus, had no pollution problem existed, and appellee simply chose the *method* of waste disposal by compacting and baling in order to dispose of waste, it would be ineligible for tax exemption because the necessary element—primary pollution control purposes—would be lacking.

Appellant construes the statute to read that tax exempt status is available only if the particular device removes pollutants from the air. Under this approach, if the appellee had placed a device on

the previously utilized incinerators which reduced pollution by 70 percent, it would be eligible for a tax exemption. However, the replacement of polluting incinerators with a method that completely eliminates pollution would not entitle appellee to take advantage of the exemption. This novel construction is without merit. The language within § 1 of the exemption act (disposing of air pollution *which if released)* when coupled with the goal of the Air Pollution Act controverts the appellant's theory. The Legislature may not reasonably be said to have intended that a facility which completely eliminates pollution problems can never qualify for tax exempt status under the act.

The trial court, accordingly, correctly determined that appellee qualified for the tax exemption.

We are next called upon to determine whether the required statutory reduction in the air pollution tax exemption "to the extent of any commercial or productive value derived from any materials captured or recovered by any air pollution control facility" means net commercial or productive value.

Section 2(2) of the exemption act provides in pertinent part that:

"Tax exemption granted under this act shall be reduced to the extent of any commercial or productive value derived from any materials captured or recovered by any air pollution control facility as defined in section 4." MCLA 336.2(2); MSA 7.793(2).

In its order reversing the State Tax Commission, the lower court ruled *inter alia:*

"That, for purposes of computing the amount of the exemption in this case, there shall be no offset against

the cost of the equipment and facility for the commercial or productive value of the recycled material, the Court having found that the value of recycled material is exceeded by the additional cost of operating the equipment and facility."

Appellant argues that the decision below judicially amended the statute to read "reduce to the extent of any *net* commercial or productive value". If the Legislature had meant net commercial value it would have so provided. It is argued that the Legislature did not intend to impose a strict accounting meaning to "commercial or productive value", but indicated that revenues generated by a business activity must be applied against the exemption.

Appellee argues that the ordinary meaning of the terms productive and commercial refer to net returns. It claims that appellant's gross asset theory would extensively weaken the purpose of the exemption act which is to provide an incentive to invest in nonproductive capital assets.

The obvious objective of the exemption act is to create an incentive to invest in pollution control devices by allowing a tax exemption. However, the Legislature was unwilling to permit economic windfalls at the public expense. Hence, § 2(2) provides that a tax exemption must be reduced "to the extent of *any* commercial or productive value derived from any materials captured or recovered by any air pollution control facility". The Legislature wisely limited the otherwise broad terms "any value" by the qualifiers "commercial or productive" in order to exclude values such as aesthetic value, and those involving goodwill. Nowhere are found the terms net value or profits. Appellee's revenue from the baling and sale of waste materials total $8,878 for 1971. Under the

statutory language this constituted any commercial or productive value. The fact that appellee's cost of operating the facility exceeded the revenue is irrelevant, since the statute does not provide that expenses should be deducted. We therefore determine that the trial court erroneously interpreted the statutory reduction requirement and to that extent we reverse the decision below.

Affirmed in part, reversed in part. No costs, there being a public question involved.