FORD MOTOR COMPANY v STATE TAX COMMISSION
DETROIT DIESEL CORPORATION v STATE TAX COMMISSION
DAIMLERCHRYSLER CORPORATION v STATE TAX COMMISSION

Docket Nos. 262487, 262488, 262500, 263188, 264154, 265686, 267565.
    Submitted January 11, 2007, at Detroit. Decided January 30, 2007,
    at 9:05 a.m. Leave to appeal granted, 480 Mich ___.

Ford Motor Company, Detroit Diesel Corporation, and Daimler-
    Chrysler Corporation separately sought tax-exemption certifi-
    cates under MCL 324.5901 *et seq.* for equipment collectively
    known as "test cells" that the companies use to ensure that the
    vehicles and engines they sell comply with federal emissions
    standards. In addition, Detroit Diesel sought a tax-exemption
    certificate for a diesel engine assembly line. The Department of
    Environmental Quality (DEQ) denied certificates for all the
    equipment, and the State Tax Commission affirmed the denials.
    The companies petitioned various circuit courts for review of
    the commission's decisions. The Wayne Circuit Court, Michael
    J. Callahan, J., reversed with regard to Ford's equipment, and
    the commission, the DEQ, and the city of Dearborn (as an
    intervening respondent) separately appealed in Docket Nos.
    262487, 262488, 262500, and 264154. The Wayne Circuit Court,
    Isidore B. Torres, J., affirmed with regard to Detroit Diesel's
    equipment, and Detroit Diesel appealed in Docket No. 263188.
    The Washtenaw Circuit Court, Timothy P. Connors, J., and the
    Oakland Circuit Court, Michael D. Warren, Jr., J., also affirmed
    with regard to DaimlerChrysler's equipment, and Daimler-
    Chrysler appealed in Docket Nos. 265686 and 267565. The
    Court of Appeals consolidated the appeals.

    The Court of Appeals *held*:

    1. The test cells clearly qualify for tax-exemption certificates
under MCL 324.5901 and 324.5903 because they were installed or
acquired for the primary purpose of controlling or disposing of air
pollution, they were designed and are operated primarily for the
control, capture, and removal of pollutants from the air, and they
are suitable, reasonably adequate, and meet the intent and pur-
poses of MCL 324.5501 *et seq.* The companies installed the test
cells solely to ensure compliance with federal emission standards.

The language of MCL 324.5901 and 324.5903 does not require that the test cells themselves physically capture air pollutants. It is enough that the primary purpose of the test cells is to control air pollution by ensuring that the companies' products adequately control, capture, and remove air pollutants when compared to earlier versions of the companies' vehicles and engines. The test cells qualify for the tax exemption even if the companies' primary motivation is to ensure that their products can be sold.

2. Detroit Diesel's engine line does not quality for the tax exemption, however, because it is operated primarily to produce a new type of engine for sale.

Docket Nos. 262487, 262488, 262500, and 264154 affirmed; Docket Nos. 265686 and 267565 reversed; Docket No. 263188 affirmed in part and reversed in part; and cases remanded to the commission for further proceedings.

TAXATION — TAX EXEMPTIONS — ENVIRONMENT — AIR-POLLUTION CONTROL EQUIPMENT.

The State Tax Commission must issue a tax-exemption certificate for machinery, equipment, or structures, or any part or accessories of machinery, equipment, or structures, that are installed or acquired for the primary purpose of controlling or disposing of air pollution and that were designed and are operated primarily for the control, capture, and removal of air pollutants and are suitable, reasonably adequate, and meet the intent and purposes of part 55 of the National Resources and Environmental Protection Act, which concerns air-pollution controls; to be exempt, the machinery, equipment, or structure need not itself physically capture air pollutants as long as the primary purpose is to control air pollution; machinery, equipment, or structures qualify for the exemption even if the primary motivation of the person applying for the exemption is to ensure that the person's products can be sold (MCL 324.5501 *et seq.*, 324.5901, and 324.5903).

*Honigman Miller Schwartz and Cohn LLP* (by *Jeffrey A. Hyman* and *Michael B. Shapiro*) for Ford Motor Company.

*Butzel Long* (by *Carl Rashid, Jr., Michael F. Smith,* and *Katherine D. Goudie*) for Detroit Diesel Corporation and DaimlerChrysler Corporation.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Ross H. Bishop*, Assistant Attorney General, for the State Tax Commission.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *John Fordell Leone*, Assistant Attorney General, for the Department of Environmental Quality.

*Debra A. Walling*, Corporation Counsel, and *William H. Irving*, Assistant Corporation Counsel, for the city of Dearborn.

*Cummings, McClorey, Davis & Acho, P.L.C.* (by *Owen J. Cummings* and *Anne McClorey McLaughlin*), for Redford Charter Township.

*Keusch, Flintoft & Conlin, P.C.* (by *Peter C. Flintoft*), for Sylvan Township.

*Secrest Wardle* (by *William P. Hampton* and *Derk W. Beckerleg*) for the city of Auburn Hills.

Before: METER, P.J., and O'CONNELL and DAVIS, JJ.

METER, P.J. These consolidated appeals primarily require us to interpret certain language contained in the Natural Resources and Environmental Protection Act (NREPA), 324.101 *et seq.* Specifically, they require us to determine whether certain equipment installed by Ford Motor Company (Ford), DaimlerChrysler Corporation (DC), and Detroit Diesel Corporation (DD) qualifies for tax exemptions under part 59 of the NREPA, MCL 324.5901 *et seq.*, because the equipment constitutes "facilities," see MCL 324.5901, "designed and operated primarily for the control, capture, and re-

moval of pollutants from the air," see MCL 324.5903.[1] We conclude that the equipment identified as "test cells" in these appeals qualifies for a tax exemption, but that the "engine line" operated by DD does not.[2] We affirm in Docket Nos. 262487, 262488, 262500, and 264154 (dealing with Ford); we reverse in Docket Nos. 265686 and 267565 (dealing with DC); and we affirm in part and reverse in part in Docket No. 263188 (dealing with DD).

The pertinent facts in these cases are not complicated and are largely undisputed. Ford, DC, and DD each purchased and installed millions of dollars' worth of equipment that became what we collectively refer to in this opinion as "test cells." Ford, DC, and DD installed these test cells in order to ensure that their vehicles and engines complied with certain emissions standards mandated by the Environmental Protection Agency (EPA). The test cells test, analyze, and monitor the pollutants emitted by vehicles and engines and enable Ford, DC, and DD to produce products for sale that conform to EPA requirements. In addition to test-cell equipment, DD, in order to comply with EPA emissions standards, also installed a new assembly line that enabled it to produce an "Equinox" diesel engine that produced fewer emissions than its former "Series 60" diesel engine.

Ford, DC, and DD applied under MCL 324.5901 *et seq.* for tax-exemption certificates for the test cells and the diesel engine assembly line. MCL 324.5901 states, in part:

---

[1] There are three additional subissues raised in these appeals that will be addressed after resolution of the primary issues.

[2] The cases involving Ford and DC concern only test cells. The case involving DD concerns test-cell equipment *and* an engine line.

As used in this part, "facility" means machinery, equipment, structures, or any part or accessories of machinery, equipment, or structures, installed or acquired for the primary purpose of controlling or disposing of air pollution that if released would render the air harmful or inimical to the public health or to property within this state.

MCL 324.5903 states:

If the [D]epartment [of Environmental Quality (DEQ)] finds that the facility is designed and operated primarily for the control, capture, and removal of pollutants from the air, and is suitable, reasonably adequate, and meets the intent and purposes of part 55[3] and rules promulgated under that part, the department shall notify the state tax commission, which shall issue a certificate. The effective date of the certificate is the date on which the certificate is issued.

The DEQ denied tax-exemption certificates for all the equipment, and the State Tax Commission (STC) affirmed the denials. The various circuit courts reversed the STC with regard to Ford's equipment and affirmed the STC with regard to DC's and DD's equipment.

The circuit courts were required to "determine whether the administrative action was authorized by law and whether the decision of the hearing officer was supported by 'competent, material and substantial evidence on the whole record.' " *Boyd v Civil Service Comm*, 220 Mich App 226, 232; 559 NW2d 342 (1996) (citation omitted). Moreover,

when reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings. This latter standard is indistin-

---

[3] "Part 55" refers to MCL 324.5501 *et seq.*, which deals with air-pollution controls.

guishable from the clearly erroneous standard of review that has been widely adopted in Michigan jurisprudence. As defined in numerous other contexts, a finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made. [*Id.* at 234-235.]

Additionally, we review de novo issues of statutory interpretation. *Ayar v Foodland Distributors*, 472 Mich 713, 715; 698 NW2d 875 (2005). "Clear and unambiguous statutory language is given its plain meaning, and is enforced as written." *Id.* at 716.

We conclude that the test cells clearly qualify for tax-exemption certificates under MCL 324.5901 *et seq.* First, it is plainly apparent to us that the test cells were "installed or acquired for the primary purpose of controlling or disposing of air pollution" and that the test cells were designed and are operated "primarily for the control, capture, and removal of pollutants from the air, and [are] suitable, reasonably adequate, and meet[] the intent and purposes of part 55 . . . ." See MCL 324.5901 and MCL 324.5903. Indeed, Ford, DC, and DD installed the test cells *solely* to ensure compliance with EPA emissions standards. The DEQ and the STC argue that the primary purpose of the test cells is to ensure that Ford, DC, and DD can sell their products. This argument is unavailing. If not for the EPA standards and the requirement that Ford, DC, and DD reduce the air pollutants emitted by their products, the companies could have continued selling their products *without* installing the test cells. The DEQ and the STC also contend that the test cells should not qualify for exemptions because the cells do not themselves physically remove or control air pollution and in fact release some air pollutants during the testing process. This argument, too, is unavailing. Nothing in the pertinent statutory language requires that the *exempt equipment*

*itself* physically capture air pollutants. The test cells are operated "primarily for the control, capture, and removal of pollutants from the air" under MCL 324.5903 because without the test cells, Ford, DC, and DD would not be able to ensure that their products are adequately controlling, capturing, and removing pollutants from the air as compared to earlier versions of their vehicles and engines.

Further, available caselaw supports the conclusion that the test cells qualify for tax exemptions. Two cases, *Meijer, Inc v State Tax Comm*, 66 Mich App 280; 238 NW2d 582 (1975), and *Covert Twp Assessor v State Tax Comm*, 407 Mich 561; 287 NW2d 895 (1980), dealt with the former air pollution act, the predecessor of part 59 of the NREPA that contained, for our purposes, substantively identical provisions.

In *Meijer, supra* at 281-282, the appellee, an operator of food and department stores, realized that the incinerators it used to dispose of solid waste were creating significant air pollution. It decided to cease using an incinerator and to instead install a compactor and baler machine at a particular store. *Id.* at 282. This switch eliminated the air-pollution problem. *Id.* The appellee applied for a tax exemption for the compactor and baler machine under former MCL 336.1 *et seq.*, the predecessor of MCL 324.5901 *et seq. Meijer, supra* at 282. The Department of Public Health and the STC denied the application. *Id.* This Court held, in part:

> [A]cquisition of compacters and balers will not automatically entitle a party to tax exemption. The party must show that the primary reason for the acquisition or installation was pollution control, that the *facility* was designed and operated primarily for pollution control reasons, and that it adequately controls pollution. Thus, had no pollution problem existed, and appellee simply chose the *method* of waste disposal by compacting and baling in order to

dispose of waste, it would be ineligible for tax exemption because the necessary element—primary pollution control purposes—would be lacking.

Appellant construes the statute to read that tax exempt status is available only if the particular device removes pollutants from the air. Under this approach, if the appellee had placed a device on the previously utilized incinerators which reduced pollution by 70 percent, it would be eligible for a tax exemption. However, the replacement of polluting incinerators with a method that completely eliminates pollution would not entitle appellee to take advantage of the exemption. This novel construction is without merit. The language . . . of the exemption act . . . when coupled with the goal of the Air Pollution Act controverts the appellant's theory. The Legislature may not reasonably be said to have intended that a facility which completely eliminates pollution problems can never qualify for tax exempt status under the act.

The trial court, accordingly, correctly determined that appellee qualified for the tax exemption. [*Id.* at 285-286 (emphasis in original).]

*Meijer* supports the conclusion that the test cells need not *themselves* physically remove pollutants from the air, as long as the primary purpose of the test cells is to control air pollution.

In *Covert Twp, supra* at 573-574, Consumers Power Company sought tax-exemption certificates under former MCL 336.1 *et seq.* for "the containment building which houses the nuclear reactor at the power plant, the building's spray system, the building's cooling system and the facility's gaseous radioactive waste (radwaste) system." The STC granted the exemptions, and the circuit court, as well as this Court, affirmed. *Covert Twp, supra* at 574-575. The Supreme Court also affirmed, reasoning, in part, as follows:

The township next contends that the various facilities for which tax exemption was granted do not qualify under

the Air Exemption Act as tax exempt facilities. Specifically, the township contends that these facilities were not installed or acquired for the primary purpose of controlling or disposing of air pollution . . . ; that the facilities are not designed and operated primarily for the control, capture and removal of pollutants from the air; that the facilities are not suitable and reasonably adequate for such purposes; and that the facilities do not meet the intent and purposes of the Air Pollution Act and rules promulgated thereunder . . . .

We disagree with each of these contentions.

The first two contentions are based on similar reasoning. *It is the position of the township that the containment building and its component systems were not installed or acquired for the primary purpose of controlling or disposing of air pollution, and were not designed and operated primarily for the control, capture and removal of pollutants from the air. Rather, the primary purpose for the installation, acquisition, design and operation of these facilities was to meet the requirements of the Federal government in order to obtain an operating license for the nuclear power plant.* Further, the township argues that the use of the word "primary" indicates that tax exempt status may be granted only to those facilities which are installed or acquired for the purpose of capturing and removing air pollutants during normal plant operations. Because the type of facilities installed at the Palisades plant are designed to specifications intended to contain discharges resulting from an accident having a probability of occurrence of 1 in 17,000 per year, the primary purpose of the installation, acquisition, design and operation of these facilities does not comport with the statutory requirement.

Neither of these arguments can be sustained. *The use of the words "primary purpose" . . . and "operated primarily for" . . . evidences a legislative concern with the primary purpose served by the facility for which exemption is sought. This purpose need not, necessarily, align with the motivation of the persons installing, acquiring or operating the facilities.*

As to the township's second argument, we find nothing in the language of the Air Exemption Act drawing a distinction between the control of air pollutants resulting from normal operations of the plant, and those resulting from an accident. We do not agree that the use of the word "primary" indicates a legislative intent to draw such a distinction. Rather, we find the use of the word "primary" in these sections of the act is intended to insure that tax exemption is not granted to facilities that, incidental to their primary purpose, serve to control, prevent or abate air pollution. [*Id.* at 579-581.]

*Covert Twp* makes clear that the test cells can qualify for tax exemptions even if the primary motivation of Ford, DC, and DD in installing the test cells was to ensure that their products could be sold.

We conclude that, with regard to the test cells, the courts in the DC and DD cases failed to apply correct legal principles in determining if the STC's decisions were authorized by law. *Boyd, supra* at 232, 234. The test cells clearly qualify for tax exemptions.[4]

However, we conclude that the circuit court in the DD case did not err with regard to the engine line. Even assuming that the engine line qualifies as a "facility" under MCL 324.5901, it does not satisfy the requirements of MCL 324.5903. As noted above, MCL 324.5903 states:

If the department finds that the facility is designed and operated primarily for the control, capture, and removal of

---

[4] The DEQ and other parties argue that, under authorities such as *In re D'Amico Estate*, 435 Mich 551, 559-560; 460 NW2d 198 (1990), we must give great deference to the DEQ's construction of the pertinent statutes and therefore must conclude that the equipment at issue in these cases was not entitled to tax exemptions. We are not persuaded by this argument. Indeed, the DEQ has not been consistent on the issue. In 2001, it issued a tax exemption for a test cell acquired by Ford. In 2004, it reversed its position and attempted to revoke the exemption. Under these circumstances, we cannot conclude that the DEQ's current construction is entitled to great deference.

pollutants from the air, and is suitable, reasonably adequate, and meets the intent and purposes of part 55 and rules promulgated under that part, the department shall notify the state tax commission, which shall issue a certificate. The effective date of the certificate is the date on which the certificate is issued.

"Clear and unambiguous statutory language is given its plain meaning, and is enforced as written." *Ayar, supra* at 716. Clearly, the engine line (or the part of the engine line that could potentially be classified as a "process change" under MCL 324.5901[c]) is not "operated primarily for the control, capture, and removal of pollutants from the air . . . ." See MCL 324.5903. Instead, it is operated primarily to produce a new type of engine for sale. The circuit court in the DD case did not err in affirming the STC's decision as applied to the engine line.

There are three subissues in these appeals that we must address. First, in the DD case, Redford Charter Township (Redford) argues, as an alternative basis for affirmance, that DD was estopped from asserting to the STC that the primary purpose of its new equipment was to control air pollution issuing from its plant, because DD had allegedly taken an inconsistent position in seeking a different tax-exemption certificate under MCL 207.551 *et seq.*[5] Redford's argument is without merit. First, Redford improperly bases its argument on documents that are not part of the administrative record. See MCR 7.210(A)(2). Second, Redford has not sufficiently demonstrated to us that DD made representations to the STC that were substantively inconsistent with earlier representations.

---

[5] Because we are affirming the circuit court's ruling with regard to DD's engine line, Redford's argument is applicable solely to DD's test-cell equipment.

Next, in one of the DC cases, Sylvan Township (Sylvan) argues that DC "did not fully report its assessable property to the Sylvan Township Assessor," that "[t]here is no record to support the contention that taxes were actually paid on any of the claimed exempt properties," and that "there may be nothing to be refunded." We find no basis for appellate relief with regard to this argument. First, Sylvan tacitly admits, under the "preservation of issue" section of its appellate brief, that it raised this issue in the circuit court but not in the proceedings before the STC. Accordingly, the issue is unpreserved, and we need not address it. *Rutherford v Dep't of Social Services*, 193 Mich App 326, 330; 483 NW2d 410 (1992). Moreover, in the "conclusion and request for relief" section of its appellate brief, Sylvan states that if this Court grants relief to DC, there must be a determination of "which items of personal property are exempt as an air pollution control facility or as ancillary equipment." In the "conclusion/relief requested" section of DC's reply brief, DC states that this Court must reverse the circuit court's order and remand the matter to the STC with instructions that it "issue [DC] a refund for taxes wrongfully paid." We see no inconsistency between these two requests for relief. Indeed, taxes could not have been "wrongfully paid" in the case unless they were paid on property "exempt as an air pollution control facility or as ancillary equipment."

Finally, DD argues that the STC's hearing process violated the NREPA and the fundamental requirements of due process.[6] Essentially, DD argues that the STC's

---

[6] DC makes similar arguments on appeal. However, because the effect of our opinion today is to reverse the decisions of the STC in the DC cases, we deem DC's arguments concerning the hearing moot. Indeed, there is no additional relief we could grant in response to DC's arguments. Moreover, DD's argument on this issue remains viable only with regard

hearing was meaningless and a sham because the STC announced as follows at the outset of the hearing: "It is the position of the State Tax Commission after consultation with legal counsel that it has neither the authority nor the technical expertise to override a determination by the DEQ in regards to whether particular assets qualify for an air pollution control exemption."

We find no basis for appellate relief with regard to DD's argument. Evidently, DD believes that we should reverse the STC's and the circuit court's conclusions regarding the engine line because the STC made this statement at the beginning of the hearing. However, we emphasize that (1) despite this statement, the STC nevertheless granted DD a full hearing and (2) nothing prevented DD from arguing during the hearing that the STC was *not* in fact bound by the DEQ's determination. Under these circumstances, it is clear to us that no due process violation occurred. Moreover, even if we were to reverse the circuit court's decision with regard to the engine line and remand for a new STC hearing (at which the STC would acknowledge that it was not bound by the DEQ's findings), a different outcome surely would *not* result in this case. Indeed, the pertinent issue was fully aired at the hearing that already occurred, and it is clear that the engine line does not qualify for the desired tax exemption. A remand for a new hearing on the issue would be a waste of administrative resources. Under the specific circumstances presented here, no appellate relief is warranted.

We affirm in Docket Nos. 262487, 262488, 262500, and 264154; we reverse in Docket Nos. 265686 and

to the status of the engine line, because we have granted DD its requested appellate relief with regard to its test-cell equipment.

267565; and we affirm in part and reverse in part in Docket No. 263188. These cases are remanded to the STC for further proceedings consistent with this opinion. We do not retain jurisdiction.