KELLY, J.
(concurring in the result). Justice YOUNG and Justice WEAVER disagree about whether the test cells at Ford Motor Company, DaimlerChrysler Corporation, and Detroit Diesel Corporation are entitled to tax-exemption certificates. The justices reasonably apply the statutory language, but reach opposite conclusions. In this situation, judicial construction should be brought to bear to resolve the issue. When the applicable canon of interpretation is applied, it becomes apparent that the test cells are not entitled to tax-exemption certificates. Thus, although I disagree with some of his reasoning, I concur in the result of Justice Young’s opinion.
In addition, I agree with both Justice WEAVER and Justice YOUNG that the Detroit Diesel Corporation engine production equipment is not entitled to a tax-exemption certificate. Finally, I agree that the corporation received a full hearing before the STC that satisfied its due process rights.
*237 THE TWO-PART TEST OF NREPA
The issue that divides Justice YOUNG and Justice WEAVER is whether the test cells qualify for tax-exemption certificates under part 59 of the Natural Resources and Environmental Protection Act (NREPA).[1] For purposes of this case, the key provisions of part 59 are §§ 5901 and 5903. Section 5901 sets forth the definition of “facility.” It provides in relevant part:
As used in this part, “facility” means machinery, equipment, structures, or any part or accessories of machinery, equipment, or structures, installed or acquired for the primary purpose of controlling or disposing of air pollution that if released would render the air harmful or inimical to the public health or to property within this state----
Section 5903 explains when a “facility” is entitled to a tax-exemption certificate. It states:
If the department finds that the facility is designed and operated primarily for the control, capture, and removal of pollutants from the air, and is suitable, reasonably adequate, and meets the intent and purposes of part 55 and rules promulgated under that part, the department shall notify the state tax commission, which shall issue a certificate. The effective date of the certificate is the date on which the certificate is issued.
Using these statutes, a two-part test must be applied to determine whether the test cells are entitled to tax-exemption certificates. First, the test cells must qualify as a “facility” under § 5901. Second, the “facility” must meet the additional requirements set forth in § 5903.
SECTION 5901
With respect to the first consideration, the test cells are facilities if they are (1) machinery, equipment, *238 structures, or any part or accessories of machinery, equipment, or structures and (2) installed or acquired for the primary purpose of controlling or disposing of air pollution (3) that if released would render the air harmful or inimical to the public health or to property within this state. It is uncontested that the test cells are machinery, equipment, or structures. The dispute is over the other two statutory requirements.
Respondents argue that the test cells were not installed or acquired for the primary purpose of controlling or disposing of air pollution. I disagree. Petitioners installed the test cells solely to comply with pollution laws. The test cells have no other purpose. Were it not for pollution laws, petitioners could build their products without the need for test cells. In fact, it would be cheaper for them to do so. Thus, it seems clear to me that the primary purpose of installing test cells was to control air pollution.
Respondents also argue that the test cells do not qualify as facilities because their primary purpose is not to control or dispose of pollution within Michigan. I reject this argument because the statute does not require that the primary purpose of the equipment be to improve air quality in Michigan. Instead, the statutory command is satisfied if the pollution that the equipment is concerned with controlling or disposing of, if released, would “render the air harmful or inimical to the public health or to property within this state.” The command is satisfied here. If the pollutants that the test cells are concerned with controlling were released into the air, they would be harmful to the public health and property within the state.
Finally, respondents argue that the test cells are not facilities because they create a small amount of pollution. This fact is irrelevant. The test cells are facilities if *239 their primary purpose is controlling or disposing of pollutants that, if released, would be harmful to the public health and property within this state. These requirements are satisfied.
SECTION 5903
The next step of the inquiry is to determine if the test-cell facilities meet the requirements of § 5903. A facility is entitled to a tax-exemption certificate under this section if it is (1) designed and operated primarily for the control, capture, and removal of pollutants from the air, (2) suitable, reasonably adequate, and (3) meets the intent and purposes of part 55 of the act.
Notably, § 5903 requires the “facility” to be “designed and operated primarily for the control, capture, and removal of pollutants from the air.” This differs from § 5901, which requires the test cells to be “installed or acquired for the primary purpose of controlling or disposing of air pollution.” It must be assumed that this difference in wording is purposeful. As a result, § 5903 imposes a more stringent requirement than § 5901. Accordingly, it does not follow from the fact that the test cells qualify as “facilities” that they are “designed and operated primarily for the control, capture, and removal of pollutants from the air.”
The test cells do not actually remove pollution that is already in the air. Instead, they are part of a process that reduces the amount of pollution in the air by preventing the creation of pollutants. Because the test cells are not concerned with pollutants that are already in the air, it can be argued that the test cells are not “designed and operated primarily for the control, capture, and removal of pollutants from the air.” There is some merit to this argument. Accordingly, I believe that *240 it is reasonable to decide that the test cells do not qualify for tax-exemption certificates. This is the result reached by Justice YOUNG.
On the other hand, the test cells are operated solely in an effort to comply with federal pollution standards. By complying with these standards, the quantity of pollutants in the air is reduced. Considering that the test cells are part of a process that eliminates the creation of pollutants, they remove pollutants that would otherwise be in the air. The statute does not explicitly require the facility to remove pollutants that are already in the air. Hence, I believe that it is also reasonable to decide that the facilities are entitled to tax-exemption certificates. Justice WEAVER reaches this conclusion.
Because I believe that both Justice Young’s and Justice Weaver’s constructions of the statute are reasonable, I conclude that the correct application of the statute to the facts of this case is uncertain. As a consequence, the statute is ambiguous.[2] The remaining provisions of NREPA do not clarify this ambiguity. Accordingly, I conclude that it is appropriate to turn to sources outside the statutory language to resolve the case.
THE EFFECT OF DEQ RULINGS AND CASELAW
Both sides claim that the rule that deference is owed to administrative interpretations supports their position. The Department of Environmental Quality (DEQ), which is authorized to determine eligibility for part 59 tax exemptions, decided that the test cells at *241 issue are not entitled to tax-exemption certificates. However, this decision is inconsistent with at least one recent DEQ decision that granted a tax-exemption certificate to a test-cell facility. Accordingly, because the DEQ’s current interpretation is inconsistent with another of its recent interpretations, it does not weigh heavily in favor of either position.
The parties also identify prior published court opinions interpreting part 59 as supporting their positions. But these opinions do not resolve the present case. In Covert Twp Assessor v State Tax Comm [3] the facilities at issue controlled, captured, and removed discharges resulting from a nuclear accident.[4] Accordingly, the facilities’ primary concern was with pollutants that had already been created. This differs from the test cells involved here that have a goal of preventing pollutants from ever being created. Thus, that case is not on point because the facts were materially different. The other case, Meijer, Inc v State Tax Comm,[5] is also not directly on point. Furthermore, it is a Court of Appeals decision. As such, it is not binding on this Court.
Finally, we are directed to decisions of other states interpreting their tax-exemption statutes. Given that these cases involve statutes that differ from Michigan’s statutes, I find them of little assistance in determining the proper interpretation of the Michigan statute.
THE CANONS OF STATUTORY CONSTRUCTION
Because I cannot resolve the issue using the statute’s language alone and the other sources I have mentioned *242 do not point in either direction, I turn to the canons of construction. Most applicable is the well-established canon that tax exemptions are to be strictly construed.[6] When this canon is applied, test-cell facilities are exempt from taxation only if the statutory language does not allow another construction. But another construction is not only possible, but reasonable. As a result, I conclude that the test cells are not entitled to tax-exemption certificates.
CONCLUSION
I conclude that the test cells qualify as facilities under § 5901, but that the correct application of § 5903 is unclear. DEQ rulings and existing caselaw are not dispositive of the issue. As a result, I engage in judicial construction to determine whether the facilities are entitled to tax-exemption certificates.
The appropriate canon of construction is that tax exemptions are to be strictly construed. By strictly construing the exemption in question, I conclude that the test-cell facilities are not entitled to tax-exemption certificates. As a consequence, I concur with Justice Young’s resolution of this issue. I also agree that Detroit Diesel’s engine line is not eligible for the tax exemption. Therefore, I agree with Justice YOUNG that the Court of Appeals decision should be partially affirmed and partially reversed.

 MCL 324.5901 et seq.

 A statute is ambiguous when its application to the facts of the case is uncertain. Elias Bros Restaurants, Inc v Treasury Dep’t, 452 Mich 144, 150; 549 NW2d 837 (1996).

 Covert Twp Assessor v State Tax Comm, 407 Mich 561; 287 NW2d 895 (1980).

 Id. at 580.

 Meijer, Inc v State Tax Comm, 66 Mich App 280; 238 NW2d 582 (1975).

 See, e.g., East Saginaw Mfg Co v East Saginaw, 19 Mich 259, 279 (1869); Michigan United Conservation Clubs v Lansing Twp, 423 Mich 661, 664; 378 NW2d 737 (1985).