BOYD v CIVIL SERVICE COMMISSION

Docket No. 178099. Submitted May 8, 1996, at Lansing. Decided November 22, 1996, at 9:30 A.M. Leave to appeal sought.

Lucinda Boyd filed a grievance against the Department of Corrections, alleging that a strip search for alleged controlled substances that was conducted when she returned to her employment at the State Prison of Southern Michigan following a medical leave was conducted in violation of a department directive because no warrant was obtained and reasonable suspicion did not exist for the search. The hearing officer denied the grievance. The petitioner appealed to the Employment Relations Board, which reversed the hearing officer's decision. The Civil Service Commission reversed the decision of the board. The petitioner appealed to the Ingham Circuit Court. The court, Lawrence M. Glazer, J., found that reasonable suspicion existed to conduct the strip search, but found that the Department of Corrections had failed to comply with its policy directive regarding such searches. Therefore, the court reversed the Civil Service Commission's decision and remanded the matter to the Department of Civil Service for a determination of the benefits due the petitioner. The Civil Service Commission and the Department of Corrections appealed by leave granted and the petitioner cross appealed.

The Court of Appeals held:

1. The appropriate standard of review that the Court of Appeals must employ in reviewing an administrative agency decision that has already been reviewed by a lower court is to determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings. The latter standard is indistinguishable from the clearly erroneous standard of review, under which a finding is clearly erroneous when, on review of the whole record, the Court of Appeals is left with the definite and firm conviction that a mistake has been made.

2. To the extent that the circuit court held that the petitioner derived any measure of procedural or substantive protection from the language of the Department of Correction's policy directive, the

court committed clear legal error and that portion of its decision must be vacated.

3. The policy directive is an interpretive statement or rule intended merely to interpret the underlying statutes or promulgated rules from which the agency derives its authority. Because an interpretive statement is without the force of law, no sanction attaches to the violation of it, but, rather, only to the violation of the underlying statutes or validly promulgated rules.

4. The circuit court did not misapprehend or grossly misapply the substantial evidence test in finding that the strip search was based on reasonable suspicion. On the basis of the Department of Correction's reasonable suspicion, a strip search was authorized by statute, MCL 800.284; MSA 28.1624 and MCL 764.25a; MSA 28.884(1), and by the fact that the petitioner was subject to strip searches as a condition of employment. The portion of the circuit court's judgment that upheld the Civil Service Commission's denial of the petitioner's grievance must be affirmed.

Affirmed in part and vacated in part.

1. ADMINISTRATIVE LAW — APPEAL — CIRCUIT COURTS — COURT OF APPEALS — STANDARD OF REVIEW.

A circuit court conducting a direct review of an administrative agency decision must determine whether the administrative action was authorized by law and whether the decision of the hearing officer was supported by competent, material, and substantial evidence on the whole record; the Court of Appeals reviews the circuit court's review to determine whether the circuit court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings; the Court of Appeals will find the circuit court's finding regarding the substantial evidence test clearly erroneous when, on review of the whole record, the Court of Appeals is left with the definite and firm conviction that a mistake has been made (Const 1963, art 6, § 28; MCL 600.631; MSA 27A.631).

2. ADMINISTRATIVE LAW — INTERPRETIVE RULES.

An administrative agency's interpretive statements or rules are those that interpret and apply the provisions of the statutes under which the agency operates; no sanction attaches to the violation of an interpretive rule, which is without the force of law; rather, a sanction attaches only to the violation of an underlying statute or validly promulgated rule.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Michael E. Cavanaugh* and *Michael J. Laramie*), for the petitioner.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Allan J. Soros*, Assistant Attorney General, for the respondents.

Before: HOLBROOK, JR., P.J., and SAAD and W. J. GIOVAN,* JJ.

HOLBROOK, JR., P.J. Petitioner, a former state prison employee, filed a grievance against her then employer, the Department of Corrections (DOC). A hearing officer denied the grievance, and the Employment Relations Board (ERB) reversed the hearing officer's decision. The Civil Service Commission reversed the ERB's decision and upheld the hearing officer's denial of the grievance. The Ingham Circuit Court reversed the Civil Service Commission's decision and remanded the matter to the Department of Civil Service. This Court granted respondents' application for leave to appeal, and petitioner cross appealed. We now affirm in part and vacate in part the circuit court's order.

In 1990, petitioner was employed as director of library services at the State Prison of Southern Michigan. In April of that year, while petitioner was on an extended medical leave, the prison mailroom supervisor reported to DOC investigator Arden Mellberg that a manila envelope had been returned to the prison because it was undeliverable and that inside the envelope was a white envelope with green trim pread-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

dressed to petitioner at the prison law library, a legal periodical, instructions on how to conceal drugs inside the periodical, and instructions on when to mail the white envelope. A second incident occurred around May 11, 1990, when the mailroom supervisor reported to Mellberg that another white envelope with green trim addressed to petitioner at the prison law library had been received. The envelope was similar to the white envelope with green trim from the April incident and it contained a legal periodical with marijuana concealed inside. Both the April and May incidents occurred while petitioner was on medical leave. On either July 10 or 13, Mellberg was informed of a tip received from a prisoner who indicated that petitioner believed prison administrators were harassing her and that she planned to smuggle cocaine into the prison on her first day back at work following the medical leave. Mellberg considered the informant's tip to be reliable because the informant did not work in the law library and the informant knew that petitioner was on leave and had been involved in a dispute with the prison administration. A Michigan State Police detective who was contacted regarding these incidents was of the opinion that petitioner could be detained legally and strip searched without a warrant. On the basis of the April and May incidents and the prisoner's tip, Mellberg sought and received permission from the warden to conduct a strip search of petitioner.

On July 19, 1990, petitioner arrived at the prison gate and was informed that the warden had ordered her to be strip searched on suspicion that she was bringing a controlled substance into the prison. She cooperated with the search, and no contraband was

found either on her or in her car. Petitioner filed an employee grievance, alleging that the strip search was conducted in violation of a DOC policy directive, because no warrant was obtained and reasonable suspicion did not exist for the search. Petitioner also alleged that the search was further evidence of a pattern of sexual harassment against her by prison administrators in violation of certain civil service rules.

Following the step four grievance hearing, the hearing officer denied the grievance, finding that reasonable suspicion existed to conduct the search and that the DOC had acted in accordance with its applicable policy directive, PD-DWA-30.05.[1] Petitioner appealed to the ERB, which reversed, finding the policy directive regarding searches to be ambiguous and construing that ambiguity in petitioner's favor. Thereafter, the Civil Service Commission reversed the decision of the ERB, finding that the DOC had complied with its policy directive. Petitioner appealed to the circuit court, which found that, in light of the need for heightened security in a prison, reasonable suspicion existed to conduct the strip search of petitioner. The court went on, however, to draw a distinction between illegal and legal contraband and to hold that § 7 of PD-DWA-30.05 required prison authorities—who have determined in advance that reasonable suspicion exists that an employee will attempt to commit a crime by bringing illegal contraband into the prison—to notify

---

[1] PD-DWA-30.05 is a twelve-page policy directive, entitled "Search and Arrest of Prisoners, Employees and Visitors." The stated objective of the directive is "[t]o prevent the introduction of contraband into correctional facilities by requiring appropriate searches of prisoners, visitors and employees."

the appropriate police agency before conducting a
strip search of the employee.[2] The court concluded
that the DOC had failed to comply with its own policy
directive because it had not notified the appropriate
police agency before subjecting petitioner to a strip
search. The court reversed the decision of the Civil
Service Commission and remanded the matter to the
Department of Civil Service for the "determination of
whatever benefits may be due." Respondents appeal
by leave granted, arguing that the circuit court's deci-
sion was contrary to law, arbitrary and capricious,
and without the support of substantial evidence in the
record. Petitioner filed a cross appeal.

---

[2] The circuit court explained:

   Now, the reason I mention this distinction between illegal con-
traband and legal contraband is that the applicable paragraph or
the policy directive, second paragraph of section seven speaks of
cases, in fact, all cases where there is reasonable suspicion that
has been determined in advance that a visitor or employee will
attempt to bring any of these items.

   If you look back to what it's talking about the items are essen-
tially illegal contraband. To me, then, the only way to make sense
of these several provisions about search of employees is that if
there is determined in advance to be reasonable grounds for suspi-
cion that an employee is going to bring illegal contraband into the
prison, that is to say, is going to commit a crime, then and in all of
those cases the prison authorities must notify a police agency
which will then presumably seek to obtain a search warrant from
an independent magistrate. That was not done in this case, and this
was, indeed, a case where there was an advance determination that
reasonable grounds for suspicion existed that this employee is
going to bring illegal and criminal contraband into the prison.

   So the department did not follow its own policy. I am not ruling
that they had to get a search warrant. I am not ruling on that issue.
I am ruling that they had to contact the police because they had
reasonable grounds to believe a crime was going to be committed.

I

The first and most pressing issue to be resolved is the appropriate standard of review that *this Court* must employ in reviewing an administrative agency decision that already has been reviewed by a lower court. Judicial review of decisions of the Civil Service Commission is established by the Revised Judicature Act. MCL 600.631; MSA 27A.631. The scope of that review is established in Const 1963, art 6, § 28,[3] which requires the court conducting a "direct review" to determine whether the administrative action was authorized by law and whether the decision of the hearing officer was supported by "competent, material and substantial evidence on the whole record." *Viculin v Dep't of Civil Service*, 386 Mich 375; 192 NW2d 449 (1971). Neither our state constitution nor our statute set forth the appropriate standard of review that an appellate court is to employ, and judicial decisions have provided a confusing array of standards.

In *Universal Camera Corp v NLRB*, 340 US 474; 71 S Ct 456; 95 L Ed 456 (1951), the United States Supreme Court analyzed the standard of judicial review of agency decision making in the federal system and concluded, at 490-491:

---

[3] Const 1963, art 6, § 28 provides, in pertinent part:

All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.

> Our power to review the correctness of application of the present standard ought seldom to be called into action. Whether on the record as a whole there is substantial evidence to support agency findings is a question which Congress has placed in the keeping of the Courts of Appeals. This Court will intervene only in what ought to be the rare instance when the standard appears to have been misapprehended or grossly misapplied.

Likewise, the question whether substantial evidence supports a state agency finding has been placed by our state constitution in the hands of the court of direct review, e.g., the circuit court in this case. Const 1963, art 6, § 28. To hold that this Court—an intermediate appellate court—must also conduct a direct review of the agency's findings is to contravene the plain terms of our state constitution and to vitiate the sieve-like nature of the appellate process. In his treatise, Professor Don LeDuc sets out the various inconsistent standards applied by our appellate courts and concludes as follows:

> The setting in Michigan is ripe for application of the clearly erroneous test as applied in the United States Supreme Court in *Universal Camera Corp v National Labor Relations Board.* That case defined the roles of the various federal courts in the judicial review of administrative agency action context and held that the role of the court reviewing a lower court's review of agency action was to determine if the lower court had misapprehended or grossly misapplied the substantial evidence test. Under *Universal Camera,* the initial court of review operates as the primary locus of judicial review of agency fact-finding and bears the responsibility of applying the appropriate scope of review to such fact-finding. Each subsequent reviewing court reviews the findings of the earlier reviewing court, rather than the findings of the agency. This defines the function of the first reviewing court as the primary fact-finding check on agencies and represents a much

better use of judicial resources. [LeDuc, Michigan Administrative Law, § 9:49, ch 9, pp 68-69.]

We agree with Professor LeDuc's sensible comments regarding this seemingly intractable issue.[4] Application of the *Universal Camera* standard will preserve scarce judicial resources, enhance the role of this Court as an intermediate appellate court, and discourage unnecessary appeals. We find further support for adoption of the clear-error standard in our Supreme Court's recent amendment of MCR 7.203(A)(1) to provide for appeals by leave granted, rather than as of right, of judgments of lower courts that have reviewed agency action. While the amendment may have had several objectives, one clear import was to return primary review of agency fact finding to the court of direct review. We therefore hold that when reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings. This latter standard is indistinguishable from the clearly erroneous standard of review that has been

---

[4] In interpreting administrative arbitration pursuant to 1969 PA 312, a panel of this Court, in *Detroit v Detroit Fire Fighters Ass'n,* 204 Mich App 541; 517 NW2d 240 (1994), agreed in principle with Professor LeDuc's comments but considered itself bound by *Detroit v Detroit Police Officers Ass'n,* 408 Mich 410; 294 NW2d 68 (1980), which interpreted the standard of review of Act 312 arbitration panel decisions. Here, however, we are not so constrained. Our Supreme Court has not addressed the relationship of higher and lower courts in the context of reviewing administrative agency decisions pursuant to Const 1963, art 6, § 28 where the initial court employs the substantial evidence standard rather than conducting review de novo. Cf. *Dep't of Civil Rights ex rel Johnson v Silver Dollar Café,* 441 Mich 110; 490 NW2d 337 (1992); *Dixon v Ford Motor Co,* 402 Mich 315, 318-319; 262 NW2d 666 (1978).

widely adopted in Michigan jurisprudence. As defined in numerous other contexts, a finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made.[5]

II

Turning to the substantive issue at hand, petitioner argues on cross appeal that DOC personnel violated the terms of PD-DWA-30.05 by conducting the strip search in the absence of reasonable suspicion that petitioner would attempt to bring a controlled substance into the prison and by failing to obtain a warrant beforehand. We conclude that, to the extent the lower court held that petitioner derived any measure of procedural or substantive protection from the language of PD-DWA-30.05, the court committed clear legal error.

The DOC is an administrative agency subject to the provisions of the Administrative Procedures Act (APA). *Martin v Dep't of Corrections*, 424 Mich 553, 556; 384 NW2d 392 (1986); MCL 24.313; MSA 3.560(213). The director of the DOC is empowered under MCL 791.206; MSA 28.2276 to promulgate rules regarding the control, management, and operation of state prisons, as well as further rules "with respect to the affairs of the department as the director considers necessary or expedient for the proper administration of this act." Petitioner has not challenged the DOC's failure to promulgate PD-DWA-30.05 as either a substantive or procedural rule pursuant to the APA; therefore, for purposes of this appeal, we will presume

---

[5] See, e.g., *Silver Dollar Café*, n 4, *supra* at 116-117; *Tuttle v Dep't of State Hwys*, 397 Mich 44, 46; 243 NW2d 244 (1976).

that the policy directive falls within an exception to the APA's definition of rule. MCL 24.207; MSA 3.560(107). As such, we construe PD-DWA-30.05 as an interpretive statement or rule intended merely to interpret the underlying statutes or promulgated rules from which the agency derives its authority. See *Clonlara v State Bd of Ed*, 442 Mich 230, 240-241; 501 NW2d 88 (1993); *Thompson v Dep't of Corrections*, 143 Mich App 29, 32-33; 371 NW2d 472 (1985).

In *Clonlara, supra,* our Supreme Court adopted the following explanation of interpretive statements or rules:

> "[I]nterpretive rules are, basically, those that interpret and apply the provisions of the statute under which the agency operates. No sanction attaches to the violation of an interpretive rule as such; the sanction attaches to the violation of the statute, which the rule merely interprets. . . . They state the interpretation of ambiguous or doubtful statutory language which will be followed by the agency unless and until the statute is otherwise authoritatively interpreted by the courts." [*Id.* at 240-241, quoting 1 Cooper, State Administrative Law, pp 174-175.]

Cf. *Michigan Farm Bureau v Bureau of Workmen's Compensation*, 408 Mich 141; 289 NW2d 699 (1980) (the APA does not provide for interpretive "rules").

Because an interpretive statement is without the force of law, no sanction attaches to the violation of PD-DWA-30.05, but, rather, only to the violation of an underlying statute or validly promulgated rule. As authority for its implementation, PD-DWA-30.05 cites, among others, MCL 800.281 *et seq.*; MSA 28.1621 *et seq.*, MCL 764.25a; MSA 28.884(1), and 1989 AACS, R 791.2210. Of particular importance to our facts are MCL 800.284; MSA 28.1624, which authorizes the

search of any person coming into a correctional facility who is "suspected" of being in possession of contraband, and MCL 764.25a(2)(a); MSA 28.884(1)(2)(a), which authorizes the strip search of a person where "there is reasonable cause to believe that the person is concealing a . . . controlled substance." The question then is whether the DOC's strip search of petitioner contravened these statutory provisions.

Although the lower court erred as a matter of law in construing the DOC's policy directive as providing either procedural or substantive protections to petitioner, we do not find it necessary to remand this matter to the circuit court. Upon a finding of reasonable suspicion that petitioner was in possession of or concealing a controlled substance, a strip search of petitioner was authorized by statute, see MCL 800.284; MSA 28.1624 and MCL 764.25a; MSA 28.884(1), and by the fact that petitioner was subject to strip searches as a condition of employment.[6] See

---

[6] Also submitted into evidence at the grievance hearing was the DOC Employee Handbook that had been distributed to petitioner. Notably, § IV(2) stated at p 45:

SUBJECT TO SEARCH

Employees, their personal property and motor vehicles are subject to search while on the grounds of an institution or a corrections center, as set forth in PD-DWA-30.05 "Search and Arrest of Prisoners, Employees and Visitors."

Search of the automobile or personal property of an employee shall be conducted in the presence of that employee or his/her designated representative. A strip search may be conducted if there is *Reasonable suspicion* the employee is attempting to bring contraband onto the grounds of the institution or corrections center. Such a search may be conducted only with the authority from the Shift Commander or a higher ranking official.

An employee who refuses to submit to a search which is authorized by policy may be subject to discipline, up to and including dismissal. [Emphasis in original.]

*People v Demps,* 196 Mich App 433, 434; 493 NW2d
466 (1992); *People v Whisnant,* 103 Mich App 772,
781; 303 NW2d 887 (1981). As a factual matter, the
circuit court had found that, in light of the need for
heightened security in a prison, "there was evidence
on the record to support the hearing officer's finding
that there was grounds for reasonable suspicion given
these allegations." Accordingly, applying the *Univer-
sal Camera* standard of review, we find that the cir-
cuit court did not misapprehend or grossly misapply
the substantial evidence test in finding that the strip
search of petitioner was based upon reasonable suspi-
cion, albeit that the court may have found authoriza-
tion for the search in the policy directive rather than
the statutes. Given this finding, we need not address
the issue whether petitioner consented to the search
or whether such consent was impliedly coerced.[7]

Finally, to the extent that petitioner argues that the
strip search violated her Fourth Amendment right to
be free from an unreasonable search without a war-
rant, we find such a claim to constitute an impermis-
sible enlargement of the scope of her appeal. See
*Michigan Up & Out of Poverty Now Coalition v
Michigan,* 210 Mich App 162, 167-168; 533 NW2d 339
(1995). Petitioner's employment grievance, in which
she sought reinstatement of used leave benefits and
back pay, may not be transformed at this late stage of
the litigation into a cause of action based on a viola-
tion of her constitutional rights. In any event, our
affirmance of the circuit court's finding that reasona-

---

[7] At the grievance hearing, the parties stipulated the fact that petitioner
"cooperated with the request for a strip search."

ble suspicion existed for the search negates petitioner's claim of a Fourth Amendment violation.

We affirm that portion of the circuit court's judgment that upheld the Civil Service Commission's denial of petitioner's employment grievance. We vacate that portion of the court's decision that improperly construed the DOC's policy directive.