# STATE OF MICHIGAN

# COURT OF APPEALS

BRAD JEWETT and TRINA JEWETT,

Appellants,

v

CHARTER TOWNSHIP OF GARFIELD,

Appellee.

UNPUBLISHED
August 17, 2017

No. 331092
Grand Traverse Circuit Court
LC No. 2015-030915-AA

Before: BECKERING, P.J., and MARKEY and SHAPIRO, JJ.

PER CURIAM.

In 2013, appellants Brad and Trina Jewett submitted an application for a special use permit (SUP) to appellee Garfield Charter Township's Planning Commission for the construction of a senior living apartment complex. The Planning Commission denied the application. Appellants appealed the decision to the circuit court, which affirmed the Planning Commission's decision. Appellants appeal by right. We affirm.

## I. BACKGROUND

The property that is the subject of this dispute is 6.3 acres of vacant land that is located in Garfield Township, Traverse City, Michigan; the property is zoned R-1B for single family residential housing under the Garfield Township Zoning Ordinance. The R-1B zoning classification contemplates land use that is "designed to accommodate the development of low-medium density residential uses . . . [and] also includes existing one-family developments within the Township . . . ." Section 6.3.1.

Consistent with this intent, the Ordinance restricts certain land uses in single family residential zones, but permits, in the discretion of the Planning Commission, some "institutional uses" upon application for an SUP. See Section 6.3.3; Section 6.2.4(2). Any such "institutional uses" are "[s]ubject to all requirements of Article VIII, Section 8.5." Section 6.2.4(2). In this regard Article VIII, Section 8.5 provides, in relevant part:

> Section 8.5.1 Statement of Intent: In recognition of the many institutional uses that have been found to be reasonably compatible with residential uses, the Township Planning Commission may authorize the construction, maintenance and operation in any residential or agricultural district of certain institutional uses specified in this Section by the issuance of a Special Use Permit.

-1-

Section 8.5.2 Permitted Uses:  The following land and structure uses may be permitted, PROVIDED, the requirements of Section 8.1 of this Article are met.

* * *

(4)    Institutions for Human Care:  . . . . [H]omes for the aged, adult foster care facilities, and age restricted independent housing or assisted living facilities.

Section 8.1 of the Ordinance, in turn, requires that any SUP application meet the "general" and "specific standards" contained in Section 8.1.3(1) and (2).[1]

**SUP Application**

In December 2013, appellants submitted an application to appellee's Planning Commission for an SUP, seeking to construct an independent senior living apartment complex on the subject property, "Culver Meadows Senior Apartments."  The facility would have 88 units, two floors, and a building footprint of approximately 42,000 square feet, with an overall square footage of 80,000 square feet. It could house between 88 and 128 occupants.  The apartments were to be located approximately 600 feet from another of appellants' senior living facilities, which is one story, 236 feet in length, measures approximately 12,000 square feet, and is also located within the single family residential housing zoning classification.

A lengthy administrative process ensued, during which appellants downsized the project to 43 units based on the Planning Commission's concerns that the apartments were inharmonious with the surrounding area.  Ultimately, however, the Planning Commission denied the SUP based on its findings that appellants' proposed project did not meet three of the Ordinance's

---

[1] The general standards required to be met must show that the proposed use will: (1) "be designed . . . as to be harmonious . . . with the existing or intended character of the general vicinity[;]" (2) "[n]ot be . . . disturbing to existing or future uses in the same general vicinity[;]" (3) "[b]e served adequately by essential facilities[;]" (4) "[n]ot create excessive additional requirements at public cost for public facilities and services[;]" and (5) "[n]ot involve uses . . . that will be detrimental to . . . the general welfare by fumes, glare or odors."  Section 8.1.3(1)(a)-(e).  The specific requirements to be met include: (1) "[t]hat the applicant may legally apply for site plan review[;]" (2) "[t]hat all required information has been provided[;]" (3) that the proposed use "conforms to all regulations of the zoning district in which it is located[;]" (4) that the plan meet the requirements for public facilities and services and other standards of governmental agencies where applicable; (5) that natural resources will be maintained as possible; (6) that the proposed use respects floodways and soil conditions and will not cause soil erosion; (7) that the drainage plan is adequate to handle storm water runoff; (8) that grading will not destroy the character of the property; (9) that the phases of development are seamless and provide for expansion of existing facilities if necessary; (10) that landscaping may be required; (11) that parking will not adversely affect traffic flow and vehicular and pedestrian traffic will be safe; (12) that outdoor garbage will be contained; and (13) that the use is in accord with the "spirit and purpose" of the Ordinance.  Section 8.1.3(2)(a)-(r).

general standards—Sections 8.1.3(1)(a) (requiring harmony with intended character), (b) (to not disturb future/existing uses), and (e) (to not create detrimental fumes, glare, and odors)—and three of the Ordinance's specific standards—Sections 8.1.3(2)(b) (failure to provide information required), (c) (non-conformity with regulations), and (r) (not in accord with spirit of Ordinance).

## Circuit Court Proceedings

Appellants appealed the Planning Commission's decision to the circuit court. In their complaint, they alleged that the Planning Commission erroneously found that "the project is not harmonious and compatible with the surrounding area, based solely on its size in comparison to a single family residential home[.]" Appellants asked that the Planning Commission's decision be reversed, claiming that it was not supported by the evidence and was an abuse of discretion. The circuit court, however, affirmed the Planning Commission's denial of the SUP. First, the circuit court rejected appellants' contention that the Planning Commission's decision was based solely on the project's size and was therefore arbitrary, reasoning:

> [A] review of the record indicates that the Planning Commission made multiple findings, not just limited to the size of the proposed building, about the Special Use Permit. With regard to Appellants [sic] project, the Planning Commission found that only two of the five general standards [applicable under Section 8.1.3 of the Ordinance when considering an SUP] were met.

Then, after reciting the Commission's findings pertinent to the denial, the circuit court stated:

> [T]he Planning Commission discussed each general and specific standard provided for in the Ordinance and indicated how and why the proposed project met or did not meet each standard. By thoroughly discussing each standard, the Planning Commission provided [a] rationale for its determination that the project was inharmonious and incompatible with the Single Family Residential District. The Planning Commission's determination that Appellants [sic] project failed to meet the requirements and standards for approval is supported by competent, substantial and material evidence on the record, and was clearly not arbitrary

## II. STANDARDS OF REVIEW

A circuit court may review an administrative decision to determine if it were authorized by law and whether the decision was supported by competent, material and substantial evidence on the whole record. Const 1963, art 6, § 28. An agency decision is not authorized by law if it violates constitutional or statutory provisions, is beyond the agency's jurisdiction, follows from unlawful procedures resulting in material prejudice, or is arbitrary and capricious. *Northwestern Nat'l Cas Co v Comm'r of Ins*, 231 Mich App 483, 488; 586 NW2d 563 (1998). A decision is supported by substantial evidence if a "reasonable mind would accept [that evidence] as adequate to support a decision[.]" *Vanzandt v State Employees Retirement Sys*, 266 Mich App 579, 584; 701 NW2d 214 (2005) (citation and quotation marks omitted). "Substantial evidence" is "more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence." *Leahy v Orion Twp*, 269 Mich App 527, 529-530; 711 NW2d 438 (2006) (citation omitted). When supported by sufficient evidence, "the circuit court may not substitute

its judgment for that of the agency, even if the court might have reached a different result." *Vanzandt*, 266 Mich App at 584.

Our review of the circuit court's decision on appeal from an agency decision is more limited. "[W]hen reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Boyd v Civil Service Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996). The last stated standard is the same as the clearly erroneous standard. *Id*. "[A] finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made." *Id*. at 235. In sum, we review the circuit court's legal conclusions de novo and its findings of fact for clear error. *Braska v Challenge Mfg Co*, 307 Mich App 340, 352; 861 NW2d 289 (2014).

## III. ANALYSIS

On appeal, appellants claim that the circuit court erred by concluding that the denial of the SUP was supported by substantial evidence and by looking exclusively to the Planning Commission's findings that the project was too large. We disagree that the circuit court erred.

As noted, the Planning Commission found that appellants' proposed project failed to meet three general standards of Section 8.1. The Planning Commission first found that Section 8.1.3(1)(a) (harmony with intended character of area) had not been met based on the following findings:

° The existing character of the general vicinity is single family residential homes and the intended character of the general vicinity is moderate density residential. The essential character of the area in which the project is proposed is low density, single family residential.

° To the extent that the general vicinity includes non-residential uses, these uses are either in another jurisdiction, are exempt from Township zoning control or approved through different zoning mechanisms as allowed by the Zoning Ordinance. These uses however do not detract from or alter the single family residential character of the general vicinity.

° In weighing this standard the Planning Commission has considered the density, size, and planned operation of the project in comparison to that of the surrounding, primarily single-family residential neighborhood.

° Appropriate project density is largely determined by its compatibility with adjacent uses and existing density in the area. In this case, Township Geographic Information System (GIS) records indicate that the density of occupied residential property (including the existing Culver Senior Living Facility) within 1/2 mile of the subject property averages 0.54 unit per acre. When considering only the single-family residential density (and excluding Culver Senior Living) existing density falls to less than 0.50 units per acre for residential properties within ½ mile of the subject property. At approximately 5.9 units per acre, the project

density is approximately 12-times the prevailing density of that of the surrounding area. The project is also at the maximum density for Moderate Density Residential, which density is contemplated only when compatible with surrounding uses. At 12-times the density of the surrounding uses, such density is not compatible.

° The proposed structure measures approximately 50,000 square feet in building area (first and second floors, excluding any basement). Based on Township Assessing records, the average square footage of residential homes within ¼ mile of the subject property measures 1,553.2 square feet (all floors, excluding basement). The average square footage of residential homes within ½ mile of the subject property measures 1,546.2 square feet (all floors, excluding basement). As such, the scale and massing of the proposed building is inharmonious and incompatible with that of the predominantly single-family surrounding area.

° The applicant has designed and presented an apartment building for active senior citizens. A parking space is provided for each unit similar to an apartment building due to the active nature of the proposed occupants.

° Traditional apartment buildings are not allowed in the R-1B Single family Residential District.

° Because of common secondary effects of operating an apartment building such as traffic, noise, light and glare, this type of use is regularly only allowed within a designated multi-family zoning district and is not appropriate within a primarily single-family residential area. The purpose of the Planning Commission's ability to authorize an "institutional use" in a low-density residential and agricultural setting was not to authorize the type of structure or use currently proposed.

° The project as proposed includes more than double the amount of parking spaces and associated drive areas than is required by the Zoning Ordinance. This excessive amount of paving leads to unnecessary stormwater runoff and an overly paved appearance, which is not compatible with that of the primarily single-family residential area.

° The proposed senior apartment building is not compatible with the uses which are permitted "by right" within the Rl-B zoning district and will change the essential character of the area in which it is proposed due to the high density of the proposed project, the size and mass of the proposed building, the amount of pavement proposed, and the amount of traffic, noise, light and glare that will be generated by this project.

° This project is not similar to the existing Culver senior living facility. The existing Culver senior living facility is one-story, 236-feet in length, and measures roughly 12,000 square feet. In contrast, the proposed project is two-stories, with roughly 50,000 square feet overall, and 328 feet in length. The Planning Commission has previously expressed that the approval for the existing Culver

senior living facility pushed the boundaries of compatibility in this vicinity. The proposed project is larger in scale, density, and intensity. As a result, the proposed project far surpasses the boundary of compatibility.

° This project is not similar to Traverse Manor. Traverse Manor is located in another part of the Township, the single-story use is shielded by topography and landscaping, and is located near the Arbors, a 468- unit apartment complex, and Chelsea Park, a 326-unit mixed-use residential development, both similar uses. In contrast, the proposed project is not shielded by topography or landscaping, is taller, and is proposed to be located in an area surrounded primarily by single family residential uses. While Traverse Manor was compatible with the character of the general vicinity due to its proximity to the Arbors and Chelsea Park, the proposed project is not compatible with the character of the general vicinity here due to its proximity to primarily single family residential uses.

Next, the Planning Commission found that the general standard of Section 8.1.3(1)(b) (to not disturb future/existing uses) had not been met, based on the following findings:

° The Planning Commission finds that the project has the potential to be disturbing to and/or negatively affect existing or future uses in the vicinity due to excessive project density and the visual impact of mass and scale of the project in relation to the surrounding single-family residential uses. The Planning Commission finds that the proposed apartment project has the potential to be disturbing and negatively affect existing or future uses in the vicinity due to the likely secondary effects of the project, such as traffic, noise, light and glare.

° The Planning Commission finds that the apartment project, as proposed, would have a detrimental effect to property in the immediate vicinity due to its size, mass and intensity.

The Planning Commission then found that appellants' project failed to meet a third general standard, Section 8.1.3(1)(e) (to not create detrimental fumes, glare, and odor), based on the following finding:

° Due to the proposed operation of the project as a senior apartment complex, a common secondary effect of such an intense use is excessive light and glare from the operation and use of the project by the residents of the 38 proposed units.

The Planning Commission also found that the application failed to meet three specific standards of Section 8.1.3. In particular, the Commission found that the proposal had not met the standards in Sections 8.1.3(b) (failure to provide information required), (c) (non-conformity with regulations), and (r) (not in accord with spirit of Ordinance) based on the following findings, respectively:

° The applicant has not submitted sufficient information as requested by the Garfield Township Planning Commission to demonstrate that the project satisfies the general standards set forth in § 8.1.3(1) of the Zoning Ordinance.

* * *

° The project fails to meet the Statement of Intent of Section 8.5, which requires institutional uses to be reasonably compatible with residential uses. The project fails to meet §8.5.2, which requires the project to meet the requirements of §8.1.

* * *

° The application conflicts with the spirit and purpose of this ordinance and with the specific objectives and principles as described in Findings [related to Sections] 8.1.3(1)(a), 8.l.3(1)(b), 8.1.3(1)(e), 8.l.3(2)(b), 8.l.3(2)(c), . . . and 8.5.

In reviewing the Planning Commission's decision to deny appellants' application for an SUP, the circuit court first re-stated the Planning Commission's relevant findings. The circuit court then found that the "Planning Commission discussed each general and specific standard provided for in the Ordinance and indicated how and why the proposed project met or did not meet each standard" and also "provided rationale for its determination that the project was inharmonious and incompatible with the Single Family Residential District." The circuit court's decision then concludes, "The Planning Commission's determination that Appellants [sic] project failed to meet the requirements and standards for approval is supported by competent, substantial and material evidence on the record . . . ."

The circuit court fully summarized the administrative proceedings and reiterated the Planning Commission's very explicit and detailed findings. Read as a whole, the court's opinion patently, but albiet implicitly, agreed that the evidence in the record would convince a reasonable mind to accept that evidence as supporting the Planning Commission's decision. See *Vanzandt*, 266 Mich App at 584. Consequently, we cannot conclude that the circuit court "misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Boyd*, 220 Mich App at 234. Additionally, we note, more specifically, that the circuit court did not err by finding that the Planning Commission's decision was not based on size alone, i.e., that it contemplated a number of factors, including density of the surrounding area, noise and glare, and the character of the general vicinity as reflected in the Planning Commission's findings. Thus, there is no merit to appellants' claim that the Planning Commission abused its discretion by denying the SUP based solely on the project's size.[2]

We affirm.

/s/ Jane M. Beckering
/s/ Jane E. Markey
/s/ Douglas B. Shapiro

---

[2] That the Planning Commission did not base its decision solely on the size of the project renders inapposite appellants' related argument that the denial of the SUP based on size alone rendered superfluous an alleged presumption as to the validity of institutional uses in Section 8.5.1.