# STATE OF MICHIGAN

# COURT OF APPEALS

BRIAN K. RITCHEY,

       Plaintiff-Appellant,

v

CITY OF BAY CITY,

       Defendant-Appellee,

and

CHRISTOPHER J. SHANNON,

       Defendant-Appellee

.

UNPUBLISHED
October 12, 2017

No. 334016
Bay Circuit Court
LC No. 15-003521-AS

Before: TALBOT, C.J., and O'CONNELL and O'BRIEN, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order dismissing his writ for superintending control. We affirm.

This case arises out of plaintiff's discharge from his position as a police officer for Bay City. At around 12:45 a.m. on May 2, 2013, plaintiff, while on duty, went to Steamer's Pub (Steamer's) to confront Joshua Elzinga regarding a photo Elzinga had uploaded to social media earlier that night depicting plaintiff's patrol car parked illegally. Another police officer, Don Aldrich, who was off duty at the time, was also at Steamer's with his wife, Carrie Aldrich. After plaintiff confronted Elzinga, he left Steamer's and went to a parking lot, where he met another officer, Keath Bartynski, to "vent" about the confrontation with Elzinga. During that time, Don approached Elzinga and began taunting and threatening him. Elzinga began recording Don's erratic behavior on his phone, and when Don became aware that he was being recorded, he ceased his behavior.

-1-

At some point while plaintiff was still venting to Bartynski, he received a text from Carrie stating that Don was "gonna fight him." In response, Bartynski and plaintiff went back to Steamer's. They reported to dispatch that they were going to Steamer's to perform a community-oriented policing stop (COPS stop)[1] rather than responding to a possible fight. When Bartynski and plaintiff arrived at Steamer's, Bartynski went into the bar, grabbed Elzinga, and took him outside. Elzinga had his phone in his hand and was recording at this time. Bartynski proceeded to place Elzinga against his police vehicle, took the phone out of Elzinga's hand, and handcuffed Elzinga. During this time, plaintiff was apparently responsible for securing the scene, but he was only paying attention to Bartynski and Elzinga. Don was near the front of the police vehicle near both Bartynski and plaintiff.

Elzinga was then placed in the police vehicle, and plaintiff, Bartynski, Don, and Carrie went out of sight around a building for roughly ten minutes. When plaintiff and Bartynski returned, they removed Elzinga from the police vehicle and uncuffed him. Elzinga requested his phone back, but plaintiff and Bartynski indicated that they did not know what had happened to it. Plaintiff told Elzinga that he gave it to the bartender, but the bartender responded that the officers had never come into the bar. Plaintiff and Bartynski then left Steamer's without returning Elzinga's phone. The referee concluded that either Don or Carrie was ultimately responsible for Elzinga's missing phone because they had a motive to take the phone because it had a video of Don acting inappropriately on it, and they had the opportunity to do so. The referee also concluded that plaintiff was in a position to observe what happened to Elzinga's phone and did nothing to stop it from being taken.

After plaintiff and Bartynski left, Don and Carrie continued to be unruly, and someone called 911. Plaintiff and Bartynski responded, but this time they were accompanied by Sergeant John Harned. Upon learning of the events from earlier in the evening, Sergeant Harned ordered plaintiff and Bartynski to leave and for each to prepare a memo of the events from that night. Subsequently, an internal investigation was launched, which ultimately recommended dismissal of the three officers. Plaintiff was a veteran and, in this case, was entitled to a hearing to determine whether termination was proper. MCL 35.402. Following the hearing, the referee made findings of fact relating to allegations of plaintiff's misconduct. Mayor Christopher Shannon reviewed the evidence and, based on the referee's findings of fact, upheld plaintiff's dismissal. Plaintiff subsequently filed a writ of superintending control with the circuit court, arguing that the referee's findings were not supported by competent, material, and substantial evidence, and that his dismissal was improper. The circuit court dismissed plaintiff's writ, concluding that the evidence was sufficient to support the mayor's conclusion.

On appeal, plaintiff challenges the circuit court's decision to dismiss his writ of superintending control. We review a trial court's decision to dismiss a writ of superintending control for an abuse of discretion. *In re Grant*, 250 Mich App 13, 14; 645 NW2d 79 (2002).

---

[1] At plaintiff's Veterans' Preference Hearing, it was clarified that a COPS stop is a routine stop that police officers make throughout the night in which they are encouraged "to get out and talk to people."

Publicly employed veterans have certain statutory rights. This case implicates MCL 35.402, which provides in part that no veteran shall be removed except for official misconduct or willful neglect in the performance of duty, and that such veteran shall not be removed except after a full hearing. Plaintiff challenges whether his conduct on May 2, 2013, constitutes official misconduct or willful neglect in the performance of duty.

In reviewing this question, we must determined "whether the circuit court properly employed the applicable standard of review, i.e., whether the [city's] decision to terminate plaintiff was supported by competent, material, and substantial evidence." *In re Grant*, 250 Mich App at 18. "Substantial evidence is any evidence that reasonable minds would accept as sufficient to support the decision; it is more than a mere scintilla of evidence but may be less than a preponderance of the evidence." *Id*. at 18-19. "Our review of the circuit court's decision is limited to determining whether the court 'applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings.'" *Id*., quoting *Boyd v Civil Serv Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996). "In other words, this Court reviews the circuit court's decision for clear error." *In re Grant*, 250 Mich App at 18. "A decision is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made." *Id*. (citation and quotation marks omitted). "If there is sufficient evidence, the circuit court may not substitute its discretion for that of the lower tribunal, even if the court might have reached a different result." *Id*. at 19.[2]

Here, plaintiff's main challenge to the referee's factual findings is that the evidence presented at the hearing was not sufficient to support those findings. However, plaintiff ignores the relatively low standard of proof that we must review those findings under: whether there was any evidence that reasonable minds would accept as sufficient to support the decision. The referee articulated a variety of evidence to support each of his conclusions, and based on our independent review of the record, the referee could have cited to additional evidence that would have supported his conclusions. Thus, it appears that the circuit court properly applied the substantial evidence test in its review of the referee's findings.

---

[2] Plaintiff challenges whether the circuit reviewed the entire record based on language it used in its order stating that it "reviewed the pleadings from both parties as well as the factual findings from" the referee. While we recognize that "[i]n applying the competent, material, and substantial evidence test, the circuit court must review the entire record, not just those portions supporting the lower tribunal's findings," *In re Grant*, 250 Mich App at 18, we conclude that the circuit court reviewed the entire record in this case. After the circuit court indicated that it reviewed the pleadings and the referee's findings, it stated that, based on its review of the record, the referee had conducted "a full, thorough, and competent review of the evidence." Thus, the circuit court clearly reviewed the entire record, and plaintiff's argument to the contrary is unconvincing. Moreover, after our review the record, we are not persuaded that the circuit court clearly erred by concluding that the referee's "factual findings were supported by the requisite quantum of evidence." *Id*. at 19.

On appeal, plaintiff attempts to identify evidence that contradicts the referee's findings, but the evidence that plaintiff cites to does not, in fact, contradict any of the findings.[3] For instance, plaintiff contends that the referee's finding that plaintiff was in a position to observe what happened to Elzinga's phone and did not prevent Don or Carrie from taking the phone was contradicted by the facts that (1) no one knew what happened to Elzinga's phone and (2) plaintiff was not responsible for securing the phone. However, the fact that no one ultimately knew what happened to the phone is irrelevant; Don and Carrie clearly had motive and opportunity to take the phone, and the referee concluded that, based on the circumstantial evidence, one of them took Elzinga's phone. See *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993) (circumstantial evidence is nonetheless evidence that "may be sufficient to establish a case"). There was no evidence that tended to show that Don or Carrie did not have a motive or opportunity to take the phone or that someone else may have taken the phone. In short, the evidence supporting the referee's finding was such that "reasonable minds would accept as sufficient to support the decision." *In re Grant*, 250 Mich App at 18-19. Moreover, the fact that plaintiff was not "responsible" for securing Elzinga's phone does not negate the fact that he observed Bartynski as he cuffed Elzinga and removed Elzinga's phone from his hand. Reasonable minds could conclude that plaintiff was in a position to observe what happened to the phone. Further, because the referee did not unreasonably conclude the Don and Carrie took the phone and plaintiff was in a position to observe their actions, it follows that plaintiff failed to prevent them from obtaining it. Accordingly, after reviewing the entire record, we are not persuaded that the circuit court misapplied the substantial evidence test to the referee's factual findings.

Further, contrary to plaintiff's argument on appeal, we conclude that the circuit court correctly concluded that the record supports the mayor's decision to uphold plaintiff's dismissal. After plaintiff's initial confrontation with Elzinga, he was still emotional to the point that he needed to "vent" about the confrontation to Bartynski in a parking lot. Plaintiff then received a text from Carrie, apparently on plaintiff's private phone, indicating that Don was "gonna fight" Elzinga. As a result, while plaintiff was still on duty and in uniform, he went back to Steamer's. However, plaintiff told dispatch that he was going to Steamer's as a COPS stop instead of reporting his actual reason for going there, namely that he received a private text message indicating that an off-duty officer was engaged or about to engage in a possible fight with a patron at Steamer's. To make matters worse, once plaintiff responded to the bar, he and Bartynski targeted Elzinga and brought him out of the bar without reason. While Bartynski proceeded to cuff Elzinga, plaintiff was responsible for securing the scene, but for some reason allowed Don and Carrie near Bartynski and Elzinga, despite the fact that the only reason they were at Steamer's was because Don was apparently "gonna fight" Elzinga. According to the referee's factual findings, plaintiff then observed Don or Carrie take Elzinga's phone and failed to stop it. It is clear based on these facts that plaintiff attempted to use his authority as a police

---

[3] In large part, this appears due to the fact that plaintiff confuses defendant's allegations with the referee's findings of fact. Before the hearing, defendant identified seven allegations that it sought to prove. In its written opinion, the referee included each allegation and then made findings of fact separate from, albeit related to, each allegation.

-4-

officer to target and bully Elzinga, then assisted in assuring that the evidence of his, Don's, and Bartynski's misconduct, which was on Elzinga's phone, was not available. Clearly, this was "conduct unbecoming an officer," *People v Hardrick*, 258 Mich App 238, 247; 671 NW2d 548 (2003), and constituted official misconduct and willful neglect in the performance of duty under MCL 35.402. Defendants therefore lawfully removed plaintiff from his employment, and we are not left with a definite and firm conviction that the decision was a mistake.

Affirmed.

/s/ Michael J. Talbot
/s/ Peter D. O'Connell
/s/ Colleen A. O'Brien