*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEARBORN HEIGHTS PHARMACY,

Petitioner-Appellee,

v

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

Respondent-Appellant.

FOR PUBLICATION
August 26, 2021
9:15 a.m.

No. 354008
Wayne Circuit Court
LC No. 19-012091-AA

Before: LETICA, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

Respondent Michigan Department of Health and Human Services ("DHHS") appeals by leave granted[1] the circuit court's order reversing its final order adopting the decision of the administrative law judge, which concluded that DHHS properly audited Dearborn Heights Pharmacy ("petitioner"), and assessed an overpayment of $803,961.86. We reverse.

## I. BACKGROUND FACTS

Petitioner operated a pharmacy in Dearborn Heights, Michigan. Petitioner voluntarily participated in Michigan's Medicaid program, which required it to make a number of agreements, including that it would allow any "state or federal government agents to inspect, copy, and or take any records . . . pertaining to the delivery of goods and services to, or on behalf of, a Medical Assistance Program beneficiary."

On June 1, 2015, DHHS issued a "bulletin" informing Medicaid pharmacies of efforts to clarify the documentation requirements for pharmacy providers. Specifically, the bulletin notified the pharmacies they must maintain particular documents "to support the size and quantity of the goods paid for by Medicaid." The bulletin stated the effective date was July 1, 2015—and, it was

---

[1] *Dearborn Hts Pharmacy*, unpublished order of the Court of Appeals, entered October 7, 2020 (Docket No. 354008).

later incorporated into the Pharmacy chapter of the Michigan Medicaid Provider Manual ("MPM") at Subsection 19.2, Invoice and Inventory Records.

In 2016, investigators from the DHHS, Office of Inspector General ("OIG"), began an inventory reconciliation audit of petitioner after OIG investigators noticed petitioner was an "outlier" in terms of its Medicaid billings for certain medications. Consequently, OIG investigators began an investigation of petitioner's inventory records of these medications for dates between January 1, 2011 to June 30, 2016. As part of its investigation, OIG received a number of documents from third-party sources, including petitioner's medication wholesalers and petitioner's bank. OIG also asked petitioner for its own records of the audited medications, with petitioner producing some records. OIG did not accept all of petitioner's proffered records, however, because its investigators could not verify their reliability.

Ultimately, OIG notified petitioner it owed an overpayment Medicaid had made to petitioner in the amount of $803,961.86. The matter was brought before an administrative law judge and, on April 18, 2019, the administrative law judge upheld the overpayment amount. The Director of DHHS affirmed this opinion in a final order entered July 9, 2019.

Petitioner appealed the Director's final order to the Wayne Circuit Court. In reversing the final order, the trial court found that an agency's ability to conduct an inventory reconciliation audit is derived from Subsection 19.2 of the Pharmacy Chapter of the Michigan MPM and, before July 1, 2015, DHHS-OIG did not have the authority to order the production of certain documents under Subsection 19.2. DHHS filed an application for leave to appeal, which this Court granted.[2]

## II. STANDARD OF REVIEW

With respect to agency decisions, "[t]he circuit court's task [is] to review the administrative decision to determine if it was authorized by law and supported by competent, material, and substantial evidence on the whole record." *Nat'l Wildlife Federation v Dep't of Environmental Quality (No 2)*, 306 Mich App 369, 372-373; 856 NW2d 394 (2014), citing Const 1963, art 6, § 28; MCL 24.306(1). "An agency decision is not authorized by law if it violates constitutional or statutory provisions, lies beyond the agency's jurisdiction, follows from unlawful procedures resulting in material prejudice, or is arbitrary and capricious." *Nat'l Wildlife Federation*, 306 Mich App at 373 (citation omitted).

"[W]hen reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Boyd v Civil Serv Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996). Indeed, "[t]his latter standard is indistinguishable from the clearly erroneous standard of review that has been widely adopted in Michigan jurisprudence." *Id*. at 234-235. "[A] finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made." *Id*. at 235. "Substantial evidence is that which a reasonable mind would accept as adequate to support

---

[2] *Dearborn Hts Pharmacy v Dep't of Health and Human Servs*, unpublished order of the Court of Appeals, entered October 7, 2020 (Docket No. 354008).

a decision, being more than a mere scintilla, but less than a preponderance of the evidence." *Vanzandt v State Employees Retirement Sys*, 266 Mich App 579, 584; 701 NW2d 214 (2005). "If there is sufficient evidence, the circuit court may not substitute its judgment for that of the agency, even if the court might have reached a different result." *Id*.

"A tribunal's interpretation of a statute is subject to review de novo. A tribunal's interpretation of an administrative rule is reviewed likewise. A tribunal's evidentiary decisions are reviewed for an abuse of discretion." *Nat'l Wildlife Federation*, 306 Mich App at 373 (citations omitted).

> The primary goal of statutory construction is to give effect to the Legislature's intent. This Court begins by reviewing the language of the statute, and, if the language is clear and unambiguous, it is presumed that the Legislature intended the meaning expressed in the statute. Judicial construction of an unambiguous statute is neither required nor permitted. When reviewing a statute, all non-technical words and phrases shall be construed and understood according to the common and approved usage of the language, and, if a term is not defined in the statute, a court may consult a dictionary to aid it in this goal. A court should consider the plain meaning of a statute's words and their placement and purpose in the statutory scheme. Where the language used has been subject to judicial interpretation, the legislature is presumed to have used particular words in the sense in which they have been interpreted. [*McCormick v Carrier*, 487 Mich 180, 191-192; 795 NW2d 517 (2010) (quotation marks and citations omitted).]

"An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008).

## III. INVENTORY RECONCILIATION AUDIT

DHHS argues the trial court erred in concluding that DHHS does not have the authority to conduct inventory reconciliation audits. We agree.

## A. LAW AND ANALYSIS

Though petitioner disputes the applicability of Subsection 19.2 of the MPM to the audit at issue, there are a number of authorities that predate and authorize the conduct of this audit. For example, the Director of Community Health has a number of obligations under MCL 400.111a, which state, in pertinent part:

> (1) The director of the department of community health . . . may establish policies and procedures that he or she considers appropriate, relating to the conditions of participation and requirements for providers established by section 111b and to applicable federal law and regulations, to assure that the implementation and enforcement of state and federal laws are all of the following:

> (a) Reasonable, fair, effective, and efficient.

> (b) In conformance with law.

(c) In conformance with the state plan for medical assistance adopted under section 10 and approved by the United States department of health and human services.

* * *

(3) Except as otherwise provided in section 111i, the director of the department of community health shall develop, after appropriate consultation with affected providers in accordance with guidelines, forms and instructions to be used in administering the program . . . .  The forms and instructions shall relate, at a minimum, to standards of performance by providers, conditions of participation, methods of review of claims, and administrative requirements and procedures that the director of the department of community health considers reasonable and proper to assure all of the following:

(a) That claims against the program are timely, substantiated, and not false, misleading, or deceptive.

(b) That reimbursement is made for only medically appropriate services.

(c) That reimbursement is made for only covered services.

(d) That reimbursement is not made to those providers whose services, supplies, or equipment cost the program in excess of the reasonable value received.

* * *

(7) The director of the department of community health may do all of the following:

(a) Enroll in the program for medical assistance only a provider who has entered into an agreement of enrollment required by section 111b(4), and enter into an agreement only with a provider who satisfies the conditions of participation and requirements for a provider established by sections 111b and 111i and the administrative requirements established or developed under subsections (1), (2), and (3) with the appropriate consultation required by this section.

* * *

(d) Recover payments to a provider in excess of the reimbursement to which the provider is entitled. The department of community health shall have a priority lien on any assets of a provider for any overpayment, as a consequence of fraud or abuse, that is not reimbursed to the department of community health.

* * *

(17) If the director of the department of community health decides that a payment under the program has been made to which a provider is not or may not be entitled, or that the amount of a payment is or may be greater or less than the amount to which the provider is entitled, the director of the department of community health,

except as otherwise provided in this subsection or under other applicable law or regulation, shall promptly notify the provider of this decision.

With respect to the preceding statute, many of these responsibilities have been delegated to the OIG under MCL 333.26368(III)(A):

A. The Office of Health Services Inspector General shall conduct and supervise activities to prevent, detect, and investigate fraud, waste, and abuse in Health Services Programs. Specifically, the Office shall do all of the following:

1. Solicit, receive, and investigate complaints related to fraud, waste, and abuse in Health Services Programs.

2. Undertake and be responsible for the Department of Community Health's duties under federal law with respect to fraud, waste, and abuse for the administration of the Health Services Programs in Michigan.

3. Actively seek out fraudulent billing practices of providers and develop techniques and procedures for detecting suspect billing patterns through the use of existing database resources managed by the Department of Community Health and available from federal sources.

\* \* \*

5. Require and compel the production of such books, papers, records, and documents as the Health Services Inspector General deems to be relevant or material to an investigation, examination, or review undertaken by the Office.

\* \* \*

8. Pursue administrative and civil enforcement actions or collections against any individual or entity that engages in fraud, abuse, or illegal or improper acts or unacceptable practices perpetrated within Health Services Programs, including but not limited to:

a. Referring information and evidence to regulatory agencies and licensure boards.

b. Withholding payment of medical assistance funds in accordance with state and federal laws and regulations.

c. Excluding providers, vendors, and contractors from participation in the Medicaid program.

d. Imposing administrative sanctions and penalties in accordance with state and federal laws and regulations.

e. Initiating and maintaining actions for civil recovery and, where authorized by law, seizure of property or other assets connected with improper payments.

f. Entering into administrative or civil settlements.

g. Pursuing any other formal or informal enforcement action relating to fraud, waste, and abuse that the Department of Community Health is authorized to take under state or federal law, including, but not limited to, any actions under Sections 111a to 111h of The Social Welfare Act, 1939 PA 280, MCL 400.111a to 400.111h, or 1979 AC, R 400.3401 to 400.3425.

* * *

10. Promptly provide all information and evidence relating to suspected fraud, waste or abuse by Health Services Programs beneficiaries to the Department of Human Services Office of Inspector General. The Office and the Department of Human Services Office of Inspector General shall collaborate on investigations as necessary.

11. Prepare cases, provide testimony, and support administrative hearings and other legal proceedings.

* * *

15. Develop procedures to collect overpayments, restitution amounts, and settlement proceeds.

16. Monitor compliance by entities participating in Medicaid programs with requirements to inform their employees, contractors, and agents about the details of state and federal false claims statutes.

* * *

24. Perform any other functions necessary or appropriate to fulfill the duties and responsibilities of the Office.

25. Comply with applicable federal law.

In addition to the responsibilities placed on DHHS and OIG, there are corresponding obligations for Medicaid providers. For example, MCL 400.111b states, in pertinent part:

(1) As a condition of participation, a provider shall meet all of the requirements specified in this section except as provided in subsections (25), (26), and (27).

* * *

(6) A provider shall maintain records necessary to document fully the extent and cost of services, supplies, or equipment provided to a medically indigent individual and to substantiate each claim and, in accordance with professionally accepted standards, the medical necessity, appropriateness, and quality of service rendered for which a claim is made.

(7) Upon request and at a reasonable time and place, a provider shall make available any record required to be maintained by subsection (6) for examination and photocopying by authorized agents of the director, the department of attorney general, or federal authorities whose duties and functions are related to state programs of medical assistance under title XIX. . . .

\* \* \*

(8) A provider shall retain each record required to be maintained by subsection (6) for a period of 7 years after the date of service.

\* \* \*

(10) A provider shall submit all claims for services rendered under the program on a form or in a format and with the supporting documentation specified and required by the director under section 111a(7)(c) and by the commissioner of insurance under section 111i. Submission of a claim or claims for services rendered under the program does not establish in the provider a right to receive payment from the program.

\* \* \*

(17) As a condition of payment for services rendered to a medically indigent individual, a provider shall certify that a claim for payment is true, accurate, prepared with the knowledge and consent of the provider, and does not contain untrue, misleading, or deceptive information. A provider is responsible for the ongoing supervision of an agent, officer, or employee who prepares or submits the provider's claims. A provider's certification required under this subsection shall be prima facie evidence that the provider knows that the claim or claims are true, accurate, prepared with his or her knowledge and consent, do not contain misleading or deceptive information, and are filed in compliance with the policies, procedures, and instructions, and on the forms established or developed under this act.

In reversing the Director's order, the trial court stated:

that [DHHS's] Final Order upholding the alleged overpayment to [petitioner] for claims submitted from January 1, 2011 through June 30, 2015, is REVERSED because the authority to conduct inventory audits found in Subsection 19.2 of Pharmacy Chapter of the Michigan [MPM] was only effective as of July 1, 2015 and for the following reasons:

1. Subsection 19.2 of the Pharmacy Chapter of the Michigan [MPM], only effective as of July 1, 2015, authorizes the OIG and Respondent/Appellee to conduct inventory audits of pharmacies.

2. That conducting an inventory audit and requiring all of the documents set forth in subsection 19.2 of the Pharmacy Chapter of the Michigan

[MPM] be maintained or be subject to recoupment prior to July 1, 2015, is not authorized by law.

The trial court did not "appl[y] correct legal principles," *Boyd*, 220 Mich App at 234, in finding that "Subsection 19.2 of the Pharmacy Chapter of the Michigan [MPM], only effective as of July 1, 2015, authorizes the OIG and Respondent/Appellee to conduct inventory audits of pharmacies." While the trial court entertained DHHS's arguments regarding other authority granting DHHS-OIG the ability to investigate fraud, the trial court failed to follow basic rules of statutory construction.

The primary goal of statutory construction is to give effect to the Legislature's intent. This Court begins by reviewing the language of the statute, and, if the language is clear and unambiguous, it is presumed that the Legislature intended the meaning expressed in the statute. Judicial construction of an unambiguous statute is neither required nor permitted. [*McCormick*, 487 Mich at 191-192 (quotation marks and citations omitted).]

Though the trial court questioned the parties about the construction of the statutory authority granting DHHS-OIG the ability to conduct audits, it failed to consider "[t]he primary goal of statutory construction is to give effect to the Legislature's intent." *Id*. By concluding that "the authority to conduct inventory audits found in Subsection 19.2 of the Pharmacy Chapter of the Michigan [MPM] was only effective as of July 1, 2015," the trial court failed to give effect to other statutory provisions requiring DHHS to ensure "that claims against the program are timely, substantiated, and not false, misleading, or deceptive," and that OIG must "[s]olicit, receive, and investigate complaints related to fraud, waste, and abuse in Health Services Programs." MCL 400.111a(3)(a); MCL 333.26368(III)(A)(1). DHHS-OIG clearly has long had broad authority to investigate possible fraud by the unambiguous terms of these provisions. Thus, the trial court failed to consider the plain language of other authority granting DHHS the authority to conduct investigations by focusing its conclusion of the effective date of Subsection 19.2.

Moreover, the trial court misapplied its own standard of review in rejecting OIG's audit of petitioner. Again, "[a]n agency decision is not authorized by law if it violates constitutional or statutory provision, lies beyond the agency's jurisdiction, follows from unlawful procedures resulting in material prejudice, or is arbitrary and capricious." *Nat'l Wildlife Federation*, 306 Mich App at 373 (citation omitted). On this record, there is no evidence that the administrative law judge's decision falls under any of these categories. Indeed, the administrative law judge's affirmance of OIG's audit was on the basis of a plain reading of statutory and other authority compelling DHHS to investigate fraud.

In sum, the trial court applied incorrect legal principles when it erroneously concluded the audit at issue was not based in law, and the trial court misapplied its own standard of review in rejecting DHHS's decision. Therefore, we reverse the holding of the trial court finding that OIG's authority to conduct inventory reconciliation audits is derived from and limited to Subsection 19.2.

IV. REQUIRED DOCUMENTS

DHHS also argues the enactment of Subsection 19.2 was within the scope of its statutory authority, and it acted within that authority when it demanded petitioner produce documentation to support its Medicaid billings. We agree in part, and disagree in part.

## A. LAW AND ANALYSIS

Initially, we must clarify the issue at hand. Rather than asking whether Subsection 19.2 exceeded the scope of DHHS's statutory authority, the more pertinent question is whether the trial court correctly applied its review authority over the administrative law judge's opinion. The trial court held "[t]hat conducting an inventory audit and requiring all of the documents set forth in subsection 19.2 of the Pharmacy Chapter of the Michigan [MPM] be maintained or be subject to recoupment prior to July 1, 2015 is not authorized by law." Again, the starting place for our limited review is to determine "whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Boyd*, 220 Mich App at 234. Indeed, "[t]his latter standard is indistinguishable from the clearly erroneous standard of review that has been widely adopted in Michigan jurisprudence." *Id*. at 234-235.

Using the applicable standard, we find the trial court "misapprehended . . . the substantial evidence test to the agency's factual findings." *Id*. at 234. Absent from the administrative law judge's factual findings was any determination that OIG "require[ed] all of the documents set forth in subsection 19.2." In fact, the record from the administrative review shows that OIG's only requirement of petitioner was that the records it produced must be "reliable." Because there is no evidence the administrative law judge's factual findings required the use of Subsection 19.2 documents, and because the record shows that OIG did not specifically require Subsection 19.2 documents, the trial court erred in reversing DHHS's decision. Consequently, we reverse the trial court.

## V. CONCLUSION

Reversed and remanded to the trial court. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Michael J. Kelly