*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRENT BROWN,

       Plaintiff-Appellant,

v

STATE OF MICHIGAN, DEPARTMENT OF
CORRECTIONS, HEIDI E. WASHINGTON, and
THOMAS PERTTU,

       Defendants-Appellees.

UNPUBLISHED
June 22, 2023

No. 361565
Court of Claims
LC No. 21-000235-MP

Before: RIORDAN, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Plaintiff Trent Brown, an inmate of defendant Michigan Department of Corrections (MDOC), appeals as of right the trial court's order dismissing his claims against defendants State of Michigan, MDOC, MDOC Director Heidi E. Washington, and resident unit manager Thomas Perttu. In a nutshell, we are compelled to dismiss this appeal because plaintiff failed to comply with the Prisoner Litigation Reform Act (PLRA), MCL 600.5501 *et seq.*, which requires that an inmate-appellant, upon commencing an appeal, disclose the number of civil actions and appeals that he or she previously has filed. Regardless, as explained herein, even if plaintiff did comply with the PLRA, we would affirm the trial court.

## I. BACKGROUND

This case involves MDOC policy regarding excess prisoner legal property. As explained in greater detail below, MDOC policy directive 04.07.112 essentially provides that an inmate, like plaintiff, only may possess property, both personal and legal, which can be contained within one state-issued duffel bag. However, under that policy directive, an inmate is allowed to possess excess legal property in one or more state-issued footlockers if, after a hearing, it is determined that he or she actually possesses such excess legal property. Apparently, the purpose of the policy directive is to balance institutional needs for order and control with inmates' needs to protect their legal rights.

-1-

On December 13, 2021, plaintiff filed a complaint in the trial court. According to the complaint and accompanying exhibits, on January 2, 2020, plaintiff told "P.C." Wilson that he had "a sizable cache of excess legal property" in his prison cell and that he accordingly was entitled to a hearing under MDOC policy directive 04.07.112. Wilson, however, for reasons not clear from the record, ignored plaintiff's concerns. That same day, plaintiff filed a grievance. On January 14, 2020, defendant Perttu investigated and denied the grievance, writing as follows:

> Prisoner was interviewed on 1/14/20 and prisoner stated, "I have excess property and require a hearing on my legal materials." Prisoner was told to pack up his property. Once packed up I personally went to his cell and observed everything fit into one state duffle bag at this time. Prisoner does not need a property hearing for excess legal. I find no violation of PD 04.07.112 or PD 03.03.130. Grievance denied.[1]

According to the complaint, defendant Perttu's statement was false because he "failed to acknowledge [plaintiff's] large stack of legal materials kept separately, on the bare floor," as well as other legal property that was "stored in AMF's Property Room."

Plaintiff alleges that on January 30, 2020, defendant Perttu retaliated against him by refusing to process his legal mail, and at about the same time, defendant Perttu pursued an unfair minor misconduct against plaintiff. In addition, on February 6, 2020, plaintiff noticed that some of his excess legal property, which was "stored on the bare floor," had "essentially been decimated by rodents and moisture."[2] On March 8, 2021, plaintiff "submitted to Defendant Perttu a hand-drafted document titled 'Request for Retraction,' " which apparently demanded that defendant Perttu retract his allegedly false statement on January 14, 2020, that plaintiff did not have excess legal property. Also in March 2021, plaintiff filed a grievance against defendant Perttu for the same reason. The grievance procedure culminated in an unsuccessful Step III appeal.[3] Accordingly, in light of these allegations, plaintiff sought equitable and monetary relief.

---

[1] MDOC policy directive 03.03.130 generally provides that inmates must be treated "humanely" and cannot be discriminated against for wrongful reasons. It is mostly a statement of principles, not a concrete set of policies.

MDOC policy directive 04.07.112 implies that prison staff determines that an inmate has excess property through an inspection or during the process for transferring an inmate to another facility. Thus, if an inmate has excess property that cannot be contained within one state-issued duffel bag, prison staff will presumably discover this fact when preparing the inmate for transfer.

[2] Plaintiff has never alleged or even implied that the destruction of his excess legal property was caused by prison staff. In fact, plaintiff provides no details about the alleged destruction, other than to briefly note that the destruction was caused by rodents and moisture.

[3] In this context, a Step III appeal is a grievance filed to challenge a Step II appeal, which in turn is a grievance filed to challenge the resolution of a Step I grievance. See MDOC policy directive 03.02.130, ¶¶ DD and HH. In other words, plaintiff initially filed a Step I grievance against

On the same day that he filed the complaint, plaintiff also filed a "brief in support of motion for preliminary injunction" and a "brief in support of complaint for mandamus." The brief regarding a preliminary injunction asserted that plaintiff was entitled to a preliminary injunction to prevent (1) plaintiff from being transferred to a different facility before this case was resolved, as transfer would likely result in loss of his excess legal property;[4] and (2) defendants from avoiding their inevitable monetary obligations to him as a result of the instant case.

The brief regarding mandamus mostly reiterated the factual allegations reflected in the complaint, but it explains why plaintiff believes that MDOC policy directive 04.07.112 is arbitrary. According to plaintiff, it is arbitrary because it "enables staff to arbitrarily issue an unfounded report, on plaintiff's property, with the only evidence in support solely being – the statement of the reviewing MDOC staff." Plaintiff suggests that the policy directive could additionally require prison staff to photograph an inmate's property and have the inmate sign the photograph to authenticate it. This, plaintiff explains, would remove doubt as to whether or not an inmate actually has excess property that would entitle him to a hearing.

On February 15, 2022, defendants filed a motion to dismiss for misjoinder. In the supporting brief, defendants stated that plaintiff raised three claims:

> The first claim involves Officer Perttu. There Plaintiff alleges that Perttu falsely claimed in a grievance response that Plaintiff's property fit in a duffle bag, in conjunction with Plaintiff's request under Policy Directive 04.07.112 for hearing to determine whether he had excess property. Plaintiff asserts Perttu committed libel in responding to the grievance, and that he was allowed to have a hearing on whether he had excess property under Policy Directive 04.07.112.

> The second claim is that Officer Perttu retaliated against Plaintiff because of a grievance that Plaintiff wrote against another corrections officer, when Plaintiff claims that Officer Perttu did not send out legal mail and issued Plaintiff a minor misconduct.

> The third claim is against Director Washington, where Plaintiff claims the Director . . . arbitrarily promulgated PD 04.07.112.

Defendants argued that under MCR 2.203 and MCR 2.207, the second and third claims should be dismissed without prejudice as improperly joined.

Also on February 15, 2022, defendants moved the trial court to apply MCL 600.5509 of the PLRA. Defendants explained that MCL 600.5509 essentially provides that in prisoner civil litigation, the trial court should screen the complaint to determine whether it is "frivolous" or

---

defendant Perttu and unsuccessfully challenged its resolution at two appellate stages within the prison administration.

[4] This issue is moot. Plaintiff was an inmate at Baraga Correctional Facility when this case was initiated. However, a current OTIS search indicates that plaintiff is currently an inmate at Oaks Correctional Facility.

"seeks monetary relief from a defendant who is immune from the requested relief," and to accordingly dismiss some or all of the claims in the complaint when appropriate.

On April 18, 2022, the trial court issued its order dismissing the case, stating as follows:

> Pending before the Court is defendants' request for this Court to conduct the review of plaintiff's complaint that is mandated by MCL 600.5509(1). Also pending before the Court at this time is defendants' brief in support of misjoinder. In accordance with MCL 600.5509(2), the Court hereby orders that the matter is DISMISSED, and that defendants' brief and request regarding misjoinder is DENIED as MOOT. Further, plaintiff's motion for preliminary injunction is DENIED as MOOT—to the extent it is still considered pending, given that it appears he failed to serve defendant with the motion—in light of the dismissal of this matter.
>
> Under MCL 600.5509(2) of the Prisoner Litigation Reform Act (PLRA), the Court "shall review" a complaint that is subject to the PLRA. See also MCL 600.5503(2). The Court "shall dismiss" the complaint if, after review, it finds either: (a) that the complaint or some portion of the complaint is frivolous; or (b) the complaint seeks monetary relief from a defendant who is entitled to immunity. MCL 600.5509(2)(a)-(b). Having reviewed the complaint, the Court concludes that the matter is subject to the PLRA and that both conditions in MCL 600.5509(2) have been satisfied. With respect to plaintiffs' [sic] defamation claim against defendant Thomas Perttu, the claim is barred by immunity. See *Couch v Schultz*, 193 Mich App 292, 294; 483 NW2d 684 (1992). In addition, plaintiff's remaining claims—for retaliation and concerning the promulgation of a Department of Corrections Policy Directive—are frivolous. See MCL 600.5531(c) (providing the appropriate definition for "frivolous" under the PLRA). That is, the Court concludes that plaintiff's legal positions asserted in those claims are devoid of arguable legal merit.

This appeal followed.

## II. PLRA DISMISSAL

The PLRA applies to a "civil action concerning prison conditions." MCL 600.5501. " 'Civil action concerning prison conditions' means any civil proceeding seeking damages or equitable relief arising with respect to any conditions of confinement or the effects of an act or omission of government officials, employees, or agents in the performance of their duties . . . ." MCL 600.5531(a).

MCL 600.5507 of the PLRA provides, in relevant part:

> (2) A prisoner who brings a civil action or appeals a judgment concerning prison conditions shall, upon commencement of the action or initiation of the appeal, disclose the number of civil actions and appeals that the prisoner has previously initiated.

-4-

(3) The court shall dismiss a civil action or appeal at any time, regardless of any filing fee that may have been paid, if the court finds any of the following:

* * *

(b) The prisoner fails to comply with the disclosure requirements of subsection (2).

"If a prisoner fails to disclose the number of previous suits, the statute explicitly instructs the court to dismiss the action." *Komejan v Dep't of Corrections*, 270 Mich App 398, 399; 715 NW2d 375 (2006). "[A] prisoner is obligated to disclose at the time of the commencement of an appeal the number of civil actions and appeals he had previously initiated, even when that number is zero." *Tomzek v Dep't of Corrections*, 258 Mich App 222, 224-225; 672 NW2d 511 (2003). "Further, where a prisoner fails to comply with the statute, the appeal is subject to dismissal at any time, regardless of when in the proceedings it is raised or, for that matter, whether it was raised by the appellee or by the Court on its own motion." *Id*. at 225.

In this case, plaintiff stated on the first page of his complaint that "[n]o unrelated civil actions have been previously filed, appealed in a court of this state. One such action had been filed, appealed, and adjudicated in federal court in this state." No such statement is included in the materials filed by plaintiff on May 25, 2022, when he filed his claim of appeal in this Court. The only statement of disclosure in the materials before this Court is found in exhibit 4 of plaintiff's appendix on appeal, which is the complaint filed in the trial court. His brief and appendix were filed on July 22, 2022, about two months after he filed the claim of appeal.

Accordingly, although defendants erroneously argue that plaintiff failed to comply with MCL 600.5507 in the trial court, they correctly argue that plaintiff failed to comply with that statute on appeal. Under *Tomzek*, the required disclosure must be made "the time of the commencement of an appeal." *Id*. at 224. Plainly, this refers to the time when a plaintiff files his or her claim of appeal, thereby initiating the appeal. See MCR 7.204. Thus, because plaintiff did not provide the required disclosure when he commenced his appeal, this Court must dismiss the appeal under MCL 600.5507. *Tomzek*, 258 Mich App at 225.

Nonetheless, as stated previously, we will address the merits of plaintiff's appeal.

## III. STANDARD OF REVIEW

A dismissal of plaintiff's complaint under the screening provisions of the PLRA presumably implicates MCR 2.116(C)(7), which provides for summary disposition by operation of law. This Court reviews de novo a trial court's grant of summary disposition under MCR 2.116(C)(7). *Nuculovic v Hill*, 287 Mich App 58, 60-61; 783 NW2d 124 (2010). "Questions of law, such as construction of a statute, are also reviewed de novo." *Id*. at 61. "Whether an issue is moot is a question of law that this Court reviews de novo." *In re Tchakarova*, 328 Mich App 172, 178; 936 NW2d 863 (2019).

Allegations in a pro se complaint filed by a prisoner should be held "to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v Kerner*, 404 US 519, 520; 92 S Ct 594; 30 L Ed 2d 652 (1972).

-5-

## IV.  DEFAMATION CLAIM

Plaintiff argues that the trial court erred by applying *Couch* to conclude that defendant Perttu was absolutely privileged from a defamation claim.  We agree with plaintiff, but also conclude that the trial court reached the correct result because the defamation claim was frivolous.

MCL 600.5509 of the PLRA provides, in relevant part:

> (1) The court shall review as soon as practicable a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> (2) On review, the court shall dismiss the complaint or a portion of the complaint if the court finds either of the following:

> (a) The complaint or a portion of the complaint is frivolous.

> (b) The complaint seeks monetary relief from a defendant who is immune from the requested relief.

Relatedly, MCL 600.5503(2) provides that "[t]he court shall on its own motion or on the motion of a party dismiss an action concerning prison conditions brought by a prisoner as to 1 or more defendants if the court is satisfied that the action is frivolous or seeks monetary relief from a defendant who is immune from the requested relief."  MCL 600.5531(c) provides that "frivolous" is defined by MCL 600.2591, and MCL 600.2591(3)(a)(*iii*) defines "frivolous," in relevant part, as "[t]he party's legal position was devoid of arguable legal merit."

In this case, plaintiff alleges that on January 2, 2020, he told "P.C." Wilson that he had excess legal property and therefore was entitled to a hearing under MDOC policy directive 04.07.112 to determine whether he had excess legal property.  Wilson apparently ignored the request for a hearing, so plaintiff filed a grievance.  Defendant Perttu, who was responsible for reviewing the grievance, stated as follows on a grievance form that is dated January 14, 2020:

> Prisoner was interviewed on 1/14/20 and prisoner stated, "I have excess property and require a hearing on my legal materials."  Prisoner was told to pack up his property.  Once packed up I personally went to his cell and observed everything fit into one state duffle bag at this time.  Prisoner does not need a property hearing for excess legal.  I find no violation of PD 04.07.112 or PD 03.03.130.  Grievance denied.

According to plaintiff, defendant Perttu's statement was false because plaintiff had excess property, both in his cell at the time and in another location in the prison, that did not fit into the duffel bag.  Plaintiff further alleges that on about February 6, 2020, he found that some of his legal property, which was stored on the floor in lieu of a footlocker, had been destroyed by water and rodents.  Plaintiff argues that defendant Perttu's false statement on January 14, 2020, that he did not have excess property resulted in a denial of his right to a hearing under MDOC policy directive 04.07.112.  Plaintiff implies that if the hearing had occurred, he would have shown that he was

entitled to a footlocker for his excess legal property, and if that property was consequently stored in a footlocker, it would not have been damaged.

In *Couch*, two inmates sued a corrections officer for defamation because he filed and pursued a major misconduct report against them, alleging that the inmates were guilty of "sexual misconduct (sodomy)." *Couch*, 193 Mich App at 293. This Court held that the corrections officer was absolutely privileged for any statements that he provided during the disciplinary proceedings because those proceedings are akin to a "judicial proceeding," reasoning as follows:

> It is well settled in Michigan that statements made during the course of legislative proceedings, statements made during the course of judicial proceedings, and communications by military and naval officers are absolutely privileged. "Judicial proceedings" may include any hearing before a tribunal or administrative board that performs a judicial function. . . .
>
> * * *
>
> We base our decision in part on the fact that a prison disciplinary hearing has many attributes of a judicial proceeding, including: (1) the fact that a prisoner has the right to present evidence during a prison disciplinary hearing; (2) a prisoner is entitled to present oral and written arguments on the contested issues; (3) although not entitled to cross-examine a witness, a prisoner may submit written questions to the hearing officer to be asked of the witness; (4) a prisoner is entitled to notice of the disciplinary hearing; (5) a hearing officer is subject to disqualification at the request of an inmate upon a showing of bias or for other valid reasons; (6) a hearing officer's decision must be made in writing and must include findings of fact; and (7) a prisoner is entitled to judicial review of the hearing officer's decision.
>
> After reviewing the statutory scheme pertaining to prison disciplinary hearings, we hold that a prison disciplinary hearing is a judicial proceeding and statements made in connection with such hearings are absolutely privileged.
>
> We also note that strong policy reasons favor a finding of absolute privilege. Allowing prisoners to bring defamation actions against corrections officers for statements made in the course of carrying out their obligations would have a chilling effect upon the reporting of offenses within a prison and would result in the courts being inundated with prisoners' lawsuits. We believe that the public good will not be served by subjecting prison employees to potential liability for reporting violations of prison regulations that they must uphold. [*Id*. at 294-297 (citations omitted).]

We agree with plaintiff that the trial court erred by applying *Couch*. Although *Couch* incidentally referenced public policy in favor of maintaining prison order, which applies in the context of the matter before us, the primary basis for *Couch* was the fact that major misconduct proceedings offer a variety of procedural protections similar to judicial proceedings. For example, an inmate has a right to submit questions to be asked of a witness, see MCL 791.252(e), which is similar to examination and cross-examination during trial. In contrast, the grievance process

involving plaintiff simply requires a "thorough investigation" for grievances that have possible merit. See MDOC policy directive 03.02.130, ¶ CC. Thus, *Couch* is distinguishable.

Moreover, applying *Couch* in this case is inconsistent with *Spruytte v Owens*, 190 Mich App 127; 475 NW2d 382 (1991). In that case, an inmate sued an MDOC hearing officer for denying him possession of an electronic typewriter, arguing that the hearing officer did not comply with the applicable administrative rule. *Id*. at 129. This Court ruled that the hearing officer, a resident unit manager, was not entitled to absolute immunity because "his duties are not classic adjudicatory ones." *Id*. at 131. This Court also noted that "the type of hearing that occurred in the instant case, i.e., review of a determination to disallow receipt of certain personal property, is not the kind encompassed under [MCL 791.251]." *Id*. *Spruytte* reasonably stands for the proposition that prison staff is not entitled to absolute immunity for conduct in relatively minor prison proceedings, such as the grievance proceedings that occurred here.

However, with this in mind, "[a] trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason." *Gleason v Mich Dep't of Trans*, 256 Mich App 1, 3; 662 NW2d 822 (2003). "A communication is defamatory if it tends to lower an individual's reputation in the community or deters third persons from associating or dealing with that individual." *Ireland v Edwards*, 230 Mich App 607, 614; 584 NW2d 632 (1998). "To be considered defamatory, statements must assert facts that are provable as false." *Sarkar v Doe*, 318 Mich App 156, 179; 897 NW2d 207 (2016) (quotation marks and citations omitted). "The dispositive question is whether a reasonable fact-finder could conclude that the statement implies a defamatory meaning." *Id*. (cleaned up).

The alleged defamatory statement at issue here is reflected in the grievance report issued by defendant Perttu, in which he wrote that plaintiff's property was contained within a state-issued duffel bag, and as a result, plaintiff was not entitled to a hearing under MDOC policy directive 04.07.112 for excess legal property. We cannot remotely conceive of anything about this statement that would tend to lower plaintiff's reputation in the prison community or deter others—inmates, prison officers, or both—from associating with him. Whether an inmate is entitled to a hearing for an extra footlocker is a question of prison administration. Plaintiff does not suggest that, for example, inmates who are able to contain all of their property within one state-issued duffel bag are viewed as inferior to inmates who require extra storage space, or that inmates who do not have excess legal property have a reputation for being lazy and uninterested in their legal cases. Therefore, the defamation claim was devoid of arguable legal merit, see MCL 600.2591(3)(a)(*iii*), and the trial court could have properly dismissed it as frivolous, see MCL 600.5509(2)(a). We would affirm the trial court on this alternate basis.

## V. MDOC POLICY DIRECTIVE 04.07.112

Plaintiff argues that MDOC policy directive 04.07.112 is arbitrary because it allows prison staff to deprive an inmate of his right to a hearing for excess legal property simply by reporting that the inmate does not have excess property. We disagree.

MCL 800.42 provides, in relevant part:

(3) Except as provided in subsection (4), the amount of personal property a prisoner may have in his or her living area, including personal clothing, shall not exceed the following limits:

(a) For a prisoner in a correctional facility assigned to a housing unit having a security classification of IV, V, or VI, not more than the amount that can be contained in 1 duffel bag or 1 footlocker or similarly sized container as approved by the department of corrections.

* * *

(4) A prisoner may possess property in excess of the amounts set forth in subsection (3) if that property consists of legal materials that are not available in the institutional law library to which the prisoner has access. This subsection does not require that a prisoner be allowed physical access to a law library.

* * *

(7) As used in this section and [MCL 800.44]:

(a) "Legal materials" means either of the following:

(*i*) Pleadings and other documents ordinarily filed with a court, letters, research notes, necessary exhibits, books, periodicals, and similar items that are needed for litigation which the prisoner is currently pursuing on his or her own behalf, or on behalf of another prisoner if that assistance has been approved by the institution head.

(*ii*) Pleadings, transcripts, court orders, and court opinions arising out of the offense for which the prisoner is currently incarcerated.

At the time relevant to this case, MDOC policy directive 04.07.112 provided, in relevant part:

¶ C. Excessive prisoner property in housing units constitutes a fire hazard and creates sanitation, housekeeping, and security concerns. . . . A prisoner in Level IV or V shall not have property that exceeds that which can be contained in one state issue duffel bag or similarly sized container(s) . . . . These limits apply to all of the prisoner's personal property, whether in their cell or stored elsewhere in the facility, except typewriters, musical instruments . . . , excess allowable legal property, and medically necessary items . . . .

* * *

¶ P. If the prisoner's property exceeds allowable limits due to items claimed to be legal property, a hearing shall be conducted by a hearing officer from the Department of Licensing and Regulatory Affairs to determine if the items are legal property and thus allowed to be possessed. Prisoners who have allowable excess

legal property are required to store the property in footlockers designated for that purpose, which shall be purchased by the prisoner. A prisoner who lacks sufficient funds to purchase the footlocker shall be loaned the necessary funds; loaned funds shall be treated as an institutional debt. . . . A prisoner who has more than one footlocker designated for legal property may be required to store excess footlockers in an area designated by the Warden if the Warden determines there is insufficient storage space in the prisoner's cell, room, or other housing area (e.g., bay). Upon request, a prisoner shall be provided reasonable access to their stored footlockers within two calendar days of staff receipt of the request. The prisoner also shall be allowed to exchange legal property in the stored footlockers for legal property stored in their possession.[5]

Ordinarily, administrative rules must be promulgated in accordance with the Administrative Procedures Act (APA), MCL 24.201 *et seq.*, and failure to do so renders the rule invalid. *Faircloth v Family Independence Agency*, 232 Mich App 391, 402; 591 NW2d 314 (1998). MDOC policy directive 04.07.112 was not promulgated in accordance with the APA. However, MCL 24.207(k) generally provides that "a rule or policy that only concerns the inmates of a state correctional facility and does not directly affect other members of the public" is not required to be promulgated under the APA. To the extent that plaintiff argues otherwise, that argument is meritless.

To the extent that plaintiff argues that MDOC policy directive 04.07.112 is "arbitrary," it is questionable whether such an analysis would apply here. MDOC policy directives that are not promulgated in accordance with the APA are construed "as an interpretive statement or rule intended merely to interpret the underlying statutes or promulgated rules from which the agency derives its authority." *Boyd v Civil Serv Comm'n*, 220 Mich App 226, 236; 559 NW2d 342 (1996). "Interpretative rules are, basically, those that interpret and apply the provisions of the statute under which the agency operates. No sanction attaches to the violation of an interpretive rule as such; the sanction attaches to the violation of the statute, which the rule merely interprets." *Id.* (cleaned up). Thus, while an administrative rule may be invalidated if it is "arbitrary or capricious," *Mich Farm Bureau v Dep't of Environmental Quality*, 292 Mich App 106, 129; 807 NW2d 866 (2011), the question in this case simply appears to be whether MDOC policy directive 04.07.112, as an interpretative rule, "conflict[s] with the Legislature's intent as expressed in the language of the statute at issue," see *In re Complaint of Rovas*, 482 Mich 90, 103; 754 NW2d 259 (2008).

In any event, MDOC policy directive 04.07.112 is not arbitrary, nor does it conflict with the statute at issue. "Arbitrary means fixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances or significance, and capricious means apt to change suddenly, freakish or whimsical." *Mich Farm Bureau*, 292

---

[5] In the trial court, plaintiff implied that he was Security Level V. A current OTIS search, however, indicates that plaintiff is Security Level IV. In any event, this difference is irrelevant for the purposes of this appeal.

We also note that MDOC policy directive 04.07.112 was revised effective April 26, 2021. The language of Paragraphs C and P appears to be unchanged.

Mich App at 141 (cleaned up). MDOC policy directive 04.07.112 implements MCL 800.42 by creating a reasonable system for determining whether an inmate is allowed to exceed the typical property limits because he or she has excess legal property. Under this system, a hearing is held to determine whether the excess property sought to be retained by the inmate is, in fact, permissible excess legal property. This reflects a considered balance between the institutional need for order and the inmate's need to protect his or her legal rights. It is not arbitrary.

It is true that MDOC policy directive 04.07.112 does not require any corroboration when prison staff determines that an inmate does not have excess property and therefore is not entitled to a hearing. However, this lack of required corroboration does not render the policy directive arbitrary. MDOC has dozens of policy directives that similarly allow prison staff to operate and render decisions without corroboration. For example, MDOC policy directive 03.03.130, ¶ D provides that "[p]risoners shall be permitted to maintain head and facial hair in accordance with their personal beliefs provided that reasonable hygiene is maintained." There is no required corroboration for a finding by prison staff that reasonable hygiene is not maintained. Common sense suggests that allowing prison staff a degree of autonomy is an accepted and necessary part of maintaining an orderly prison.

Any claim that MDOC policy directive 04.07.112 is arbitrary or otherwise invalid because it does not require corroboration for the simple observations of prison staff is devoid of arguable legal merit, see MCL 600.2591(3)(a)(*iii*), and the trial court properly dismissed it as frivolous under MCL 600.5509(2)(a).

## VI. PRELIMINARY INJUNCTION

Plaintiff next argues that the trial court erred by indicating in its order dismissing the case that he did not serve defendants with the motion for a preliminary injunction. We disagree, but more importantly, the trial court correctly ruled that the motion is moot.

"A matter is moot if this Court's ruling cannot for any reason have a practical legal effect on the existing controversy." *In re Tchakarova*, 328 Mich App at 178 (quotation marks and citations omitted).

In the order, the trial court stated that "plaintiff's motion for preliminary injunction is DENIED as MOOT—to the extent it is still considered pending, given that it appears he failed to serve defendant with the motion—in light of the dismissal of the matter." The trial court was correct, at least at the time, to indicate that plaintiff apparently did not serve defendants with the motion. About a month after plaintiff filed his initial documents in this matter, the trial court granted his request for alternate service but stated that he "is required to file a proof of service with the Court." Plaintiff did not do so with regard to the motion for a preliminary injunction by the time the trial court entered its order of dismissal. However, plaintiff did attach documentation to his motion for reconsideration suggesting that he mailed the motion to the Attorney General on January 18, 2022.

Regardless, whether plaintiff served defendants with the motion is beside the point. The trial court concluded that the motion was moot because the underlying legal claims were dismissed. This generally was correct. The motion for a preliminary injunction requested that the trial court

-11-

(1) enjoin defendants from transferring plaintiff to a different facility while this case is pending, apparently to prevent plaintiff from losing any excess legal property in the transfer; (2) enjoin defendants from using plaintiff's monetary relief in this case to offset his institutional debt; and (3) enjoin defendant Perttu "from not reimbursing the state." The first request is moot because plaintiff has already been transferred. The second and third requests are moot as well because they are predicated upon plaintiff prevailing in the instant case, which he did not. Thus, the motion for a preliminary injunction is moot because neither the trial court nor this Court can grant plaintiff any relief in that regard. See *In re Tchakarova*, 328 Mich App at 178.

## VII. CONCLUSION

We dismiss this appeal because plaintiff failed to comply with MCL 600.5507 of the PLRA when he commenced his appeal. Alternatively, even if we are not compelled to dismiss this appeal, we would affirm the trial court.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra